IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 11, 2007 Session

## STATE OF TENNESSEE v. DEWAYNE JONES

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-06157     Arthur T. Bennett, Judge**

_____

**No. W2006-01026-CCA-R3-CD  - Filed December 3, 2007**

_____

A Shelby County jury convicted the defendant, Dewayne Jones, of two counts of aggravated rape, a Class A felony.  Because the two counts alleged alternative theories of the same offense, the trial court merged the two convictions and sentenced the defendant as a Range I, violent offender to twenty-two years in the Department of Correction.  The defendant appeals, alleging that (1) the evidence was insufficient to support his conviction, including that the State did not prove venue was in Shelby County; (2) the trial court erred in not requiring the State to elect which of the aggravated rape counts it wished to proceed upon; and (3) the trial court misapplied one enhancement factor.  Following our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Marty B. McAfee (on appeal) and Ross Sampson (at trial), Memphis, Tennessee, for the appellant, Dewayne Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stacey McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The victim, S.S.,[1] testified that in May 2003 she lived in DeSoto County, Mississippi, with her mother and worked as a waitress at a restaurant on Beale Street in Memphis. On May 5, 2003, S.S. called and asked the defendant, whom she had met about six weeks earlier, for a ride home from work when her shift ended at 10:00 p.m. S.S. said she had accepted rides from the defendant on three occasions before May 5 but had not dated or had sex with him. The defendant, driving a white Grand Marquis, picked up S.S. promptly at 10:00 p.m. Rather than take her directly home, he made a few stops before driving to a park on Third Street in Memphis, where they kissed briefly. S.S. asked the defendant to stop because she did not want their encounter to lead to sex. The defendant then sped out of the park and turned into an apartment complex on Third Street. S.S. became frightened because the defendant was driving erratically, and she called her mother. When her mother answered, the defendant took the phone from S.S., ended the call, and punched her in the face. Her mother immediately called back, and the defendant hit S.S. in the face twice more as she attempted to reclaim her phone. When her mother called again, the defendant answered and told her that S.S. was "okay" and that he was going to bring her home. The defendant then drove out of the apartment complex, through a gas station parking lot, and back to the park on Third Street where he repeatedly struck S.S. in the head with a black metal flashlight. S.S. attempted to run from the vehicle, but the defendant caught her, knocked her down, and dragged her back to the car by her hair. He forced her to remove her clothes and placed them in the trunk of the car. They left the park and went to another gas station where the defendant exited the car, entered the gas station briefly, and returned before the victim could escape. The defendant next drove to a third gas station, pumped gas, and entered the store. The victim managed to get out of the car and tried to escape, but the defendant forced her to return to the car.

After departing the third gas station, the defendant drove the victim to a vacant lot on Holmes Road near Riverdale Road in Memphis. He ordered her to position herself in the car, unfastened his belt, and penetrated the victim digitally. At that time, a passing car slowed down as it neared the defendant's car which apparently unnerved the defendant, because he drove off and pulled into an adjacent lot. There, he choked the victim and penetrated her with his penis, once while wearing a condom and again without a condom. Afterwards, the defendant gave the victim her clothes from the trunk and told her he should kill her. The defendant drove the victim home, and her mother called the police who escorted the victim to Methodist Hospital–Germantown and the Memphis Sexual Assault Resource Center for treatment and testing. The victim said that her jaw and lip were swollen.

On cross-examination, S.S. admitted that the reason she initially exchanged phone numbers with the defendant was so she could purchase marijuana from him. Asked if she recalled saying that the sexual assault took place "on Holmes Road – which is Olive Branch – in De[S]oto County," S.S. replied in the affirmative. However, on redirect examination, S.S. reaffirmed that the rape took place on Holmes Road and said she understood that Holmes Road and the other locations she described in her direct testimony were in Shelby County, Tennessee.

---

[1]Because of the nature of this matter, we refer to the victim by her initials only.

The victim's mother, A.S., testified that in May 2003 she and the victim lived on Stateline Road in Olive Branch, Mississippi. She said that the victim called her around 9:30 p.m. on May 5, 2003, and said she was leaving work and would be home shortly. When the victim did not arrive home, A.S. called her and could hear a "tremble" in her voice, but the victim told her she was on her way home. After waiting "some time," A.S. called the victim again. A man answered and told A.S. that he had the victim and was going to bring her home, but he would not allow A.S. to speak to the victim. She called the victim's phone several more times, but no one answered. She said that when the victim arrived home, she was bloody and bruised and said she had been raped. A.S. testified that the victim told the police that she was raped on Holmes Road and beaten several times with a flashlight on Third Street. A.S. never heard the victim tell anyone that the rape occurred anywhere other than Holmes Road. A.S. said that the victim had a broken jaw, "knots all upside her head . . . hair pulled out in the top, just in a plug, just taken out, and her face was just swollen."

Shelby County Deputy Sheriff James Peterson testified that he responded to a call at Methodist Hospital–Germantown to investigate a criminal assault at around 2:30 a.m. on May 6, 2003. He met with the victim and observed that her face and chin were swollen and that she appeared to experience discomfort as she walked and to be in shock. The victim told Deputy Peterson that a man named Dewayne picked her up from work, drove her to a park off Third Street, attempted to rape her, beat her with a flashlight when she attempted to flee his vehicle, drug her back to the vehicle and raped her, and drove her to several more locations, including one near the intersection of Riverdale and Holmes Roads where he raped her again. Deputy Peterson testified that Holmes Road runs parallel to Stateline Road, the two roads are separated by approximately one-quarter mile, and no part of Holmes Road is in Mississippi. He said that each of the locations the victim described to him, including where she was raped, was in Shelby County.

Rachell Copeland, the acting coordinator of nursing services and a forensic nurse examiner at the Memphis Sexual Assault Resource Center, testified that she examined the victim on the morning of May 6, 2003. She said that the victim's injuries included right facial mandibular swelling, swelling to her chin and ear, bruising to her right eye, three knots on the back of her head, bruising on her lips and gum, and an abrasion on her left knee. She said that the victim appeared to be alert and oriented but had difficulty speaking because of her injuries. The victim told Copeland that she had accepted a ride from a black male named Dewayne, who beat her with a flashlight and his fist at a park near Third Street and raped her on Holmes Road near Riverdale Road. Copeland also collected vaginal swabs from the victim and observed sperm cells in the victim's vaginal vault.

Lieutenant Marjorie Anne Featherstone of the Shelby County Sheriff's Department interviewed the victim at the Memphis Sexual Assault Resource Center on May 6, 2003. She could tell the victim was injured, upset, and in great pain when she interviewed her. The victim told Lieutenant Featherstone that the defendant agreed to give her a ride home but, instead, took her to two parks near Third Street, beat her with his fists and a flashlight when she refused to have sex with him, made her undress and put her clothes in the trunk of his car, and took her to an apartment complex in East Memphis and locations on Riverdale Road and Holmes Road. Lieutenant Featherstone said that the locations the victim described were not searched because heavy rains,

during and immediately following the incident, would have washed away most of the available evidence. She said that all of the locations the victim described were in Shelby County.

Dr. Qadriyyah Debnam of the Tennessee Bureau of Investigation ("TBI"), an expert in serology and DNA analysis, testified that she performed DNA testing on the vaginal swabs taken from the victim, which revealed the presence of sperm. She compared DNA from the sperm with DNA from a blood sample taken from the defendant and determined that the DNA from the sperm matched the defendant's DNA. She testified that TBI Special Agent Scientist Donna Nelson verified her findings and that the probability of another human being having the same DNA as the defendant was less than one in six billion.

Markeitsha Allen, mother of the defendant's child, was the only witness for the defense. She testified that she picked up the defendant's car from the Memphis Police Department impound lot on May 26, 2003, the day after he was arrested. She saw no evidence of blood in the car when she picked it up. It appeared to her that someone had "gon[e] through" the car.

The jury found the defendant guilty of one count of aggravated rape with a weapon and one count of aggravated rape involving bodily injury, which the trial court subsequently merged. After applying several enhancement factors and no mitigating factors, the trial court sentenced the defendant as a Range I, violent offender to twenty-two years.

## ANALYSIS

### I. Sufficiency of the Evidence/Venue

Because the defendant's argument in this regard is inextricable from his first two assignments of error, we first analyze whether venue was proven to be in Shelby County. The Tennessee Constitution provides criminal defendants with the right to a jury trial in the county where the offense was committed. Tenn. Const. art. I, § 9; State v. Young, 196 S.W.3d 85, 101 (Tenn. 2006). Accordingly, "[a]lthough venue is not an element of the crime, the [S]tate must prove by a preponderance of the evidence that the offense was committed in the county alleged in the indictment." State v. Anderson, 985 S.W.2d 9, 15 (Tenn. Crim. App. 1997) (citations omitted); see also Tenn. Code Ann. § 39-11-201(e) ("No person may be convicted of an offense unless venue is proven by a preponderance of the evidence."); Tenn. R. Crim. P. 18(a) ("Except as otherwise provided by statute or by these rules, offenses shall be prosecuted in the county where the offense was committed.").

"Venue is a question for the jury," Young, 196 S.W.3d at 101 (citing State v. Hamsley, 672 S.W.2d 437, 439 (Tenn. Crim. App. 1984), and can be established by circumstantial evidence. Id. at 101-02 (citing State v. Bennett, 549 S.W.2d 949, 950 (Tenn. 1977)). To determine venue, the jury is permitted to draw reasonable inferences based on the evidence presented. Id. at 102 (citing State v. Johnson, 673 S.W.2d 877, 882 (Tenn. Crim. App. 1984)).

In this case, as evidenced by their verdict, the jurors found by a preponderance of the evidence that the offense occurred in Shelby County; and this finding is supported by the record. The victim testified that she was beaten at a park near Third Street and raped on Holmes Road near Riverdale Road. She described the locations where she was attacked with consistency to her mother, Deputy Peterson, Ms. Copeland, and Lieutenant Featherstone. Further, Deputy Peterson and Lieutenant Featherstone testified that each of the locations S.S. described was in Shelby County.

For his claim that the rape occurred in Mississippi, the defendant relies upon the following testimony elicited by defense counsel on cross-examination, when counsel questioned S.S. about a statement she apparently made in general sessions court during the preliminary hearing:

Q: Okay. Ma'am, do you recall saying that? That the sexual assault was on Holmes Road – which is Olive Branch – in De[S]oto County?

A: Yes, sir.

Q: You do recall saying that?

A: Yes, sir.

Q: Okay. So you remember that because this did happen in De[S]oto County, right, ma'am?

A: Yes, sir.

Q: Okay. So all the sexual acts that we're talking about here today, they happened in De[S]oto County, right, ma'am?

A: Yes, sir.

Q: Okay. So when you testified earlier that they happened out here on Holmes Road, that was a lie, wasn't it, ma'am?

A: No, sir.

Q: Okay. But you remember – you remember clearly that it happened in De[S]oto County, right?

A: Yes, sir.

As we will explain, this court does not entirely understand the intent of this series of questions. The initial question, that the rape occurred "on Holmes Road – which is Olive Branch – in De[S]oto County," apparently was based, as we have said, on a question asked the victim during

the preliminary hearing in general sessions court. However, it is not clear exactly what question the victim had been asked in general sessions court and what defense counsel at the criminal trial contributed to the original question. For instance, we cannot determine whether, in general sessions court, the victim had agreed to anything other than that the rape occurred on Holmes Road. If she earlier had agreed only that the rape occurred on Holmes Road, the question, as propounded in the criminal court trial, relied upon a false assumption for, as we have taken judicial notice and as Deputy Peterson testified at trial, Holmes Road is entirely in Tennessee. Therefore, the defendant's claims in this regard are without foundation. Accordingly, we conclude that there was sufficient evidence in the record for the jury to conclude that the rape occurred in Tennessee.

Next, the defendant alleges that the evidence was insufficient as a matter of law to support his conviction for aggravated rape. In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 39-13-502 sets out the elements of aggravated rape:

(a) Aggravated rape is unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;

(2) The defendant causes bodily injury to the victim;

(3) The defendant is aided or abetted by one (1) or more other persons; and

(A) Force or coercion is used to accomplish the act; or

(B) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless.

(b) Aggravated rape is a Class A felony.

The defendant asserts that the convicting evidence was insufficient because the victim "could not clearly establish through her testimony what [the defendant] did in each specific location, nor whether these acts occurred in Shelby County, Tennessee or De[S]oto County, Mississippi." According to the defendant, "Each statement that [the victim] gave to the authorities, and every version she gave in trial, conflicted with each other. . . . [Her] testimony was not consistent in any sense of the word." As we have set out previously, the evidence supports the jury's conclusion that the rape occurred in Shelby County. In the light most favorable to the State, the evidence adduced at trial showed that the defendant attacked the victim with his fists and a flashlight at a park near Third Street in Memphis and raped her at a vacant lot on Holmes Road, also in Memphis. This evidence was sufficient for a rational trier of fact to find the elements of aggravated rape beyond a reasonable doubt. This assignment is without merit.

## II. Election of Offenses

The defendant argues that the trial court should have required the State to elect offenses alleged in the indictment to clarify to the jury which allegations were proven or not proven at trial. The Tennessee Constitution safeguards the right of a criminal defendant to a unanimous jury verdict before a conviction may be imposed. State v. Lemacks, 996 S.W.2d 166, 169-70 (Tenn. 1999). Where the State presents evidence showing that more than one offense occurred, but the indictment is not specific as to which offense the defendant is being tried for, it is the responsibility of the trial court to require the State to elect which offense is being submitted to the jury. Id. at 170; see also State v. Brown, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991) ( "[I]n cases involving evidence which shows a real potential that a conviction may occur as a result of different jurors concluding

-7-

that the defendant committed different acts, each of which separately showing the commission of an offense, the trial court must augment the general unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular set of facts.").

In State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999), our supreme court explained the purpose for requiring that there be an election of offenses:

> The requirement of election serves numerous interests: it enables the defendant to prepare for the specific charge; it protects a defendant against double jeopardy; it enables the trial judge to review the weight of the evidence in its role as thirteenth juror; and it enables an appellate court to review the legal sufficiency of the evidence. See Tidwell [v. State], 922 S.W.2d [497,] 500-01 [(Tenn. 1996)]; Burlison [v. State], 501 S.W.2d [801,] 803 [(Tenn. 1973)]. The most important interest served by election, however, is to ensure that the jurors deliberate over and render a verdict based on the same offense[.]

As we understand, the defendant argues that the trial court should have directed the State to elect the offense of assault because, in the defendant's view, that is the only offense which the State proved occurred in Tennessee. This argument is without merit for several reasons. First, as we have previously determined, the State established that venue on the aggravated rape charges was proper in Shelby County. Furthermore, the defendant cites no authority for the proposition that the trial court may require the State to elect an offense not charged in the indictment. Finally, it is well-settled in Tennessee that "[t]he State is not required to elect upon separate charges in the same indictment." State v. Henley, 774 S.W.2d 908, 916 (Tenn. 1989) (first degree murder and felony murder, based on same occurrence, charged in same indictment); see also State v. Genore Dancy, No. W2001-02451-CCA-R3-CD, 2003 WL 402788, at *7 (Tenn. Crim. App. Feb. 18, 2003) (aggravated rape with a weapon and aggravated rape with the aid of one or more persons); State v. Delfro Willis, No. 02C01-9810-CC-00336, 1999 WL 487032, at *2-3 (Tenn. Crim. App. July 12, 1999) (DUI – under influence of intoxicant and DUI – alcohol concentration), perm. to appeal denied (Tenn. Nov. 22, 1999). In the present case, the State charged alternative theories of the same offense in Counts 1 and 2 of the defendant's indictment. Because the defendant was ultimately subjected to only one punishment for the single occurrence of aggravated rape, this procedure was proper. See Genore Dancy, 2003 WL 402788, at *7. This issue is without merit.

### III. Misapplication of Enhancement Factor

Of the six enhancement factors determined by the trial court to be applicable, the defendant objects only to the court's application of enhancement factor (16), that he abused a position of trust. See Tenn. Code Ann. § 40-35-114(16) (2003).

At the sentencing hearing, the trial court found six enhancement factors to be applicable:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(2) The defendant treated the victim with exceptional cruelty during the commission of the offense;

(3) As to Count 1 of the indictment, the personal injuries inflicted upon the victim were particularly great;

(4) As to Count 2 of the indictment, the defendant possessed or employed a deadly weapon during the commission of the offense;

(5) The defendant abused a position of private trust;

(6) The defendant was adjudicated to have committed a delinquent act as a juvenile that would constitute a felony if committed by an adult.

See Tenn. Code Ann. § 40-35-114(2), (6), (7), (10), (16), (21) (2003). Based on these factors and the absence of any mitigating factors, the trial court enhanced the defendant's sentence to twenty-two years.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for

the offense," and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114 (2003).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

We agree with the defendant that the trial court improperly applied the position of trust enhancement factor to the defendant's sentence. The nature of the relationship between the defendant and the victim was found not by the jury beyond a reasonable doubt, but by the trial court by a preponderance of the evidence. In Cunningham v. California, 549 U.S. __, 127 S. Ct. 856 (2007), the United States Supreme Court held unconstitutional California's sentencing scheme because it allowed a trial court to enhance a defendant's sentence based on facts found by the judge by a preponderance of the evidence. Id. at 868. The Court held that California's law was inconsistent with its holding in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), that a criminal defendant's Sixth Amendment right to a jury trial requires that any fact other than a prior conviction used to enhance a defendant's sentence beyond the prescribed statutory maximum must be proven to a jury beyond a reasonable doubt. Cunningham, 549 U.S. at __, 127 S. Ct. at 871. In light of Cunningham, the Tennessee Supreme Court has held that Tennessee's 1989 sentencing scheme, prior to its 2005 amendment, also violated the Sixth Amendment to the extent that it permitted sentence enhancement on the basis of judicially-found facts other than the fact of a prior conviction. State v. Gomez, __ S.W.3d __, 2007 WL 2917726, at *5 (Tenn. 2007). Therefore, it was error for the trial court to apply the position of trust enhancement factor to the defendant's sentence.

This conclusion does not require us to remand the defendant's case for resentencing. On appeal, the defendant does not contest the application of the remaining five enhancement factors. The record is clear that application of factor (2), previous history of criminal convictions in addition to those necessary to establish the appropriate range, was justified. We need not consider whether the other four factors were properly applied, for a single factor can justify sentence enhancement. State v. Michael Burnette, No. E2005-00002-CCA-R3-CD, 2006 WL 721306, at *8 (Tenn. Crim. App. Mar. 22, 2006), perm. to appeal denied (Tenn. Sept. 5, 2006). The trial court's error in improperly applying the position of trust enhancement factor was harmless.

## CONCLUSION

Following our review of the defendant's conviction and sentence, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE