**STATE of Tennessee, Appellee,**

v.

**Hershell P. JOHNSON, Appellant.**

Court of Criminal Appeals of Tennessee.

March 7, 1984.

Permission to Appeal Denied by Supreme Court May 29, 1984.

William M. Leech, Jr., Atty. Gen. & Reporter, David M. Himmelreich, Asst. Atty. Gen., Ben Fann, Alan Foster, Asst. Dist. Attys. Gen., Cookeville, for appellee.

J.H. Reneau, III, Reneau & Reneau, Celina, for appellant.

## ABRIDGED OPINION

O'BRIEN, Judge.

This appeal from the Criminal Court for Putnam County seeks reversal of a judgment finding defendant guilty of aggravated rape and two separate counts of assault with intent to commit sexual battery. The jury assessed punishment on the aggravated rape conviction at thirty-five (35) years in the penitentiary, the penalty on the two assault counts were fixed at not less than two (2) years nor more than three (3) years.

The first two issues relate to competency hearings ordered by the court. By the first of these defendant insists that, after having been ruled incompetent, he was entitled to a jury trial on the issue of restored competency. Defendant was arrested on September 6, 1981. A few days later the Putnam County General Sessions Court ordered his examination at the Plateau Mental Health Center for evaluation of his competency to stand trial and possible insanity at the time of the crime. Subsequently, on a habeas corpus hearing, the trial court directed a complete physical examination for defendant on petition by counsel. On October 22, 1981 defendant was indicted. On the same day medical personnel from the Plateau Mental Health Center reported to the General Sessions Judge their opinion that defendant presented no evidence to indicate he was insane at or about the time of the alleged crime. They further reported he denied knowing the nature of the charges pending against him, the consequences of those acts, and did not indicate

any ability to assist his counsel in his own defense. The report recommended defendant's transfer to the State Forensic Center at Nashville for further study, evaluation, and possible treatment to help him become competent to stand trial. This transfer was effected by court order on the same date. On January 6, 1982 a report from the Middle Tennessee Mental Health Institute at Nashville indicated that after completion of a competency evaluation it was concluded defendant was not capable of adequately defending himself in a court of law, and his condition warranted commitment to a mental health institute pursuant to T.C.A. § 33–708(b) and § 33–604. After a hearing on January 20, 1982, the court found defendant was mentally ill, and possessed a likelihood of serious harm, based on the reports of the examining physicians. His commitment was ordered to the custody of the Commissioner of the Department of Mental Health. Defendant was then transferred to Moccasin Bend Mental Health Institute. A report from that institution on March 22, 1982 expressed the opinion that defendant was competent to stand trial although in need of continued treatment. The recommendation was that he remain in the hospital pending action by the court. On July 30, 1982 the court set a trial date for September 21, 1982. After these several months of confinement and treatment defendant was granted a court hearing on the issue of his competence to stand trial. The case ultimately came to trial on September 27, 1982. It is insisted he was entitled to a jury trial under the provisions of T.C.A. § 33–708(b) which states that either party may demand a jury trial on the issue of judicial hospitalization. The code section cited on behalf of defendant does not authorize a jury trial on the issue of competency to stand trial. *Haynes v. State*, 540 S.W.2d 277 (Tenn.Cr. App.1976). The issue is without merit.

■ Defendant questions whether it was a denial of due process to refuse him further psychiatric examinations by either State physicians or a private physician employed at his expense on the issue of restored competency, after having been previously found incompetent. Defendant was found incapable of assisting his counsel in the conduct of his trial as previously noted. The record indicates that each of the early evaluations was somewhat indefinite. No real cause could be found for the physical and emotional symptoms demonstrated by him other than a reaction to facing trial and possible imprisonment for the offenses with which he was charged. According to reports his psychological testings were highly suggestive of malingering. At his competency hearing the Clinical Director and Assistant Superintendent of Moccasin Bend Mental Health Institute testified that during the several months in which defendant was a patient in that hospital the evaluation staff consisting of two medical doctors, two psychologists, and the entire unit staff had evaluated him extensively on numerous occasions. The doctor was rigidly cross-examined regarding the evaluation and treatment he had received. Defendant was re-examined by medical personnel from the Plateau Mental Center immediately prior to the competency hearing, and one of the physicians from that institution was present in court to testify at the time of the hearing. Defendant was entitled to no more. The test for determining if a defendant is competent to stand trial is whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). There was ample evidence for the trial judge to conclude that defendant was competent and he has not demonstrated any abuse of discretion by the court in denying further mental evaluation. There was no denial of due process.

■ Complaint is made about the chain of custody of various items of evidence introduced through the testimony of Emily Dianne Craven, a laboratory technician employed in the Tennessee Bureau of Investigation Crime Laboratory. The only objection we find in this record to the admission

of this evidence was on the failure of the State to establish a proper foundation for the testimony of the witness. There was no tangible evidence exhibited to the jury through the testimony of Ms. Craven. She was qualified as an expert forensic serologist and testified about her examination of the contents of a "rape collection kit" received at her laboratory from the Cookeville Police Department. Our perusal of this record satisfies us that the chain of evidence was sufficiently established. Dr. Roy Anderson testified he examined the ten-year-old victim in this case at the Cookeville General Hospital. In the course of the examination he collected certain items which were placed in a rape evidence kit. Included among these were glass slides containing swabs of specimens from the area of the genitalia. Dr. Anderson testified he submitted the rape kit to nursing personnel in the emergency room. No nursing personnel were called to testify. Officer Bruce Lamb of the Cookeville Police Department testified that on September 5, 1981, he was in the hospital during the course of the examination of the victim in this case and picked up the evidence kit from Dr. Anderson. He did not observe the victim because the examination was taking place in a closed-off room. He took the evidence kit to Detective Lynch. When Lamb received the kit the box was closed. He was uncertain whether it was sealed at that time or not. Officer Robert Lynch testified he received the kit from Patrolman Lamb. He kept the kit at his office until Chief Paul Jackson took it to the crime laboratory. Ms. Craven testified about the procedure used at the crime laboratory for the reception of evidence to be examined. Her testimony was that she received a sealed rape evidence collection kit which was marked to indicate it was received from Paul Jackson, Cookeville Police Department, 9/9/81 at 10:40 p.m. In the kit there were two glass slides, cotton swabs and some underwear. She found male semen on the slides and on the underwear. The procedure by which the chain of evidence was established was somewhat inept. The purpose of the procedure is to prove the identity of a substance offered in evidence and its integrity, that is, that there was no substantial alteration in the article offered which would effect its validity as evidence. Whether the requisite chain of possession has been sufficiently established to justify admission of the exhibit is a matter committed to the discretion of the trial judge and his determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. See *Ritter v. State*, 3 Tenn.Cr.App. 372, 462 S.W.2d 247 (1970). Whether Officer Lamb received the evidence kit directly from the hands of Dr. Anderson or through the intervention of a nurse attendant in the examining room is inconsequential. We find no abuse of discretion on the part of the trial judge in admitting the testimony of the witness relative to the contents of the kit and her examination of the items it contained.

 Defendant claims that the State failed to establish venue. There is not the slightest hint of evidence in this record that the incident involving the victim in this case did not occur in Putnam County. The child stated that the individual, whom she identified as defendant, took her from a ballpark where she was playing with friends, "somewhere along Free Hill Road", which was in Putnam County. He then took a dirt road that went back in the woods a short distance, less than a half mile. It was there the assault occurred. Under the Constitution of Tennessee, (Article 1, Section 9), and the statutes of this State, (Tenn.R.Crim.P. 18) an accused is entitled to trial in the county in which an offense is committed. *Smith v. State*, 607 S.W.2d 906, 907 (Tenn.Cr.App.1980). The burden is on the prosecution to prove that the offense was committed in the county laid in the indictment. *Harvey v. State*, 376 S.W.2d 497, 213 Tenn. 608 (1964). Venue may be shown by a preponderance of the evidence which may be either direct or circumstantial. *Hopper v. State*, 326 S.W.2d 448, 205 Tenn. 246 (1959). Venue must be proven to establish the jurisdiction of the court to adjudicate the proceeding on

its merits. *Harvey v. State*, supra. A jury is entitled to draw reasonable inferences from proven facts and this includes the issue of venue. See *Hopson v. State*, 299 S.W.2d 11, 201 Tenn. 337 (1957). The jury was entitled to infer from the evidence that the assault took place within the boundaries of Putnam County which is the jurisdiction where the case was tried.

Defendant raises a complaint about being denied the opportunity to use a statement of the victim contained in a police report to impeach her. He insists this statement was contradictory to her in-court testimony. The trial court properly ruled that material contained in the police report could not be used for the impeachment of a separate witness unless that witness had adopted the statement contained in the report. *State v. Robinson*, 618 S.W.2d 754 (Tenn.Cr.App.1981), also see *State v. Daniel*, 663 S.W.2d 809 (Tenn.Cr.App.1983). Defendant failed to raise this issue at the hearing on his motion for new trial and so the issue is waived. *State v. Givhan*, 616 S.W.2d 612 (Tenn.Cr.App.1981). Notwithstanding such waiver, defendant argued in the trial court for the privilege of using excerpts from the police officer's report for the purpose of impeaching the testimony of the victim. In examining the record we do not find the contradictions between the victim's prior statements and her trial testimony insisted for by the defendant. Her original complaint to the police, her testimony at the preliminary hearing, and her testimony at trial differed only in the descriptive words that she used. She explained the difference in her terminology on cross-examination by responding to defense counsel that her mother had, in the interval since the offense, suggested it would be easier for her to use the scientific names for certain parts of her anatomy involved in the assault upon her by the defendant. We find the issue totally without merit.

Defendant insists the trial court abused its discretion in excluding testimony of an alibi witness for failure to comply with Rule 12.1 of the Rules of Criminal Procedure requiring notice by a defendant of his intention to offer an alibi defense. Defendant was sent to Moccasin Bend Mental Health Institute on January 20, 1982. He was found to be competent to stand trial on March 22, 1982, with the recommendation that he remain in the hospital pending action by the court. On July 30, 1982 a trial date was set for September 21, 1982.

On August 27, 1982 the State mailed a demand for notice of alibi to defense counsel pursuant to Tenn.R.Crim.P. 12.1(a). The request was filed with the court clerk on September 1, 1982. The rule requires that upon written demand a defendant shall serve within ten days upon the District Attorney General a written notice of his intention to offer an alibi defense, stating the specific places at which he claimed to have been at the time of the alleged offense with the names and addresses of the witnesses upon whom he intends to rely to establish his alibi. On September 8, 1982, an order was entered by the court directing defendant's return from Moccasin Bend Hospital at Chattanooga to Putnam County Jail in preparation for trial. On September 20, 1982 defendant served on the State, and filed, a written notice of alibi which was untimely under the provisions of the rule. A supplemental notice adding the name of Lois Jasper as an alibi witness to the first count of the indictment was filed three days later. A subsequent motion to exclude the testimony of alibi witnesses, for failure to comply with the rule, was filed by the State and granted by the court. The trial judge later modified his ruling to allow alibi testimony for the time period during which the second and third counts of the indictment were involved.

Courts have inherent power to make and enforce reasonable rules of practice. See *Denton v. Woods*, 5 S.W. 489, 86 Tenn. 37 (1887). The Rules of Criminal Procedure also have legislative sanction. Tenn.R.Crim.P. 59. However, both the Constitution, Article 1, Section 9, and T.C.A. § 40–17–105, provide for compulsory service of process for obtaining witnesses by a defendant. Although a court rule cannot enlarge or restrict jurisdiction or

abrogate or modify substantive law, *Adcox v. Southern Railway Company*, 184 S.W.2d 37, 40, 182 Tenn. 6 (1944), we find the rule in this case to be a reasonable one, providing that the court may extend the time to give notice of an alibi, and giving the court latitude to either exclude the testimony, or, for good cause shown, grant an exception to any of the requirements of the rule. We think the defendant had adequate time to give notice in this case. He was declared competent to stand trial in March before he came to trial in September, 1982. Both he and his wife had those months to consult with defense counsel. His wife was one of the alibi witnesses, and was certainly privy to the names of those others whose testimony defendant claims was denied him as well as the information held by them. We find no merit to this issue.

■ Defendant asserts an issue involving denial of a motion to suppress a line-up without offering any authority to sustain his objection to the court's enforcement of the rule fixing the time for filing pre-trial motions. (Tenn.R.Crim.P. 12(b)). The pre-trial line-up which defendant contends should have been suppressed occurred a full year before the case came to trial. We find no reason set forth in this record for failure to timely file a suppression motion, or any reason in the record for suppression of line-up evidence had the motion been timely.

■ We find no merit to the issue raised complaining of a recess declared by the court after the closing argument of the State. Defendant cites no authority in support of this issue. His theory is that the procedure put the State at an advantage because the jury was likely to afford the State's concluding argument more emphasis than that of the defendant. The trial court has wide discretion in controlling the argument of counsel and the exercise of such discretion does not warrant reversal unless his actions may have affected the verdict to the prejudice of the defendant. *Shockley v. State*, 585 S.W.2d 645, (Tenn.

Cr.App.1978). We find no abuse of discretion.

Defendant also raises an issue in reference to the concluding argument of the State. We have read the argument complained of and do not find it to pass beyond the pale of trial advocacy. The comments of counsel were properly ruled upon by the trial court, and the jury instructed on the significance of the remarks of counsel. The evidence against defendant was very strong and direct. We do not find undue prejudice in the argument by the State or the manner in which it was conducted.

■ Defendant complains the trial court refused to deliver an "absent material witness" instruction requested by him. The trial judge properly declined to give the requested instruction. The witness to whom the defendant refers was an FBI technician who tested samples of paint from the defendant's truck and from a post in the schoolyard against which the minor victim said defendant's truck had collided. Defendant was entitled to inspect and examine any of the tests made by any of the government agencies. Tenn.R.Crim.P. 16(a)(1)(D). He was entitled to compulsory process to obtain any witness in his favor. T.C.A. § 40–17–105. The record clearly indicates defense counsel was aware that the testings made in the FBI Laboratories were inconclusive. The issue is without merit.

We do not find reversible error in this record and affirm the judgment of the trial court.

DUNCAN and DAUGHTREY, JJ., concur.