IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2001

## STATE OF TENNESSEE v. JESSIE NELSON HODGES

**Appeal from the Circuit Court for Lauderdale County**
**No. 6771     Jon Kerry Blackwood, Judge**

---

**No. W2000-00742-CCA-R3-CD - Filed June 27, 2001**

---

After a jury trial, Defendant was convicted of theft of property less than $500. He was subsequently sentenced to eleven (11) months and twenty-nine (29) days in the Lauderdale County jail. In this *pro se* appeal, Defendant argues that the State failed to provide him with discoverable material or information under Rule 16 of Tenn. R. Crim. P. After a review of the record, briefs of the parties and applicable law, we conclude that the State complied with the mandates of Rule 16. Thus, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. DAVID H. WELLES, J., not participating.

Jessie Nelson Hodges, Henning, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Lauderdale County grand jury accused Defendant with attempt to commit theft of property over the value of $1,000, but less than $10,000. Ms. Julie Pillow, Assistant Public Defender, was appointed to represent Defendant. On the Friday before trial, Defendant requested that he represent himself at trial with Ms. Pillow as his "elbow counsel." After lengthy questioning by the trial court and against the trial court's advice, Defendant insisted that he exercise his constitutional right to represent himself. The trial court, after advising Defendant of the trial procedure that would apply, permitted Defendant to represent himself and Ms. Pillow would sit at counsel table as "elbow counsel."

At the completion of jury selection, Defendant objected to the introduction of the distributors that had been brought into the courtroom for the trial by the victim. Defendant stated:

Well, not so such relevant, Your Honor. What I'm objecting to is these items has been, as they say, passed from the Police Department back to the victim -- back to the victim. The record in preliminary hearing will show that.

Now at this trial, they go back now, today, just today, to pick these items -- those so-called items they say, up. The defense has had no opportunity to examine or inspect any of this stuff at preliminary hearing before it left the Police Department's control.

I'm saying -- what I'm objecting to is I'm saying it should not be entered into evidence or shown in the value in it. It's certain that the evidence is tainted.

The Court:    Ms. Brewer?

Ms. Brewer:    Your Honor, we have given Ms. Pillow, upon discovery, upon her asking, pictures of these particular -- let me pass them up to the Court -- these particular distributors.

Your Honor, if there had been any indication that the defense wanted to review those, then we could have set up a convenient -- a mutual convenient time to have shown them to the Defendant.

However, no request was made, and we have supplied -- we have had a preliminary hearing in this matter, as well as provided discovery pursuant to Rule 16, to the defense attorney in this particular matter.

Your Honor, at this particular point, there's nothing that has been trumped up as the Defendant wants to allege in this particular case. These were stored in evidence, and were returned to the victim, who has actually kept them until this particular time.

This trial was first set last term, and he had those and brought them to that particular trial, but as that trial was bumped until today, they've been in the exact same format as when they were taken.

The trial court overruled the Defendant's objection.

At trial, Randy Hutcherson, owner of Hutcherson Metals and a scrap dealer, testified on March 22, 1999, that he received a phone call from the daughter of a tenant who lived in a house adjacent to his scrap yard. Hutcherson went to the scrap yard and observed a van backed adjacent to the house. Hutcherson used this scrap yard to store automobile cores and parts. Hutcherson saw

Defendant loading distributors from a barrel into the rear of the van. At this point, Hutcherson identified the distributors in the courtroom as being the ones taken from the van after the arrest. Also, Hutcherson recognized the van as being one which transported an employee of his to work. Hutcherson approached Defendant, and Defendant stated, "You've caught me!" Hutcherson had Defendant sit by a wall until the police arrived. Hutcherson stated Defendant was loading two types of distributors into the van, Ford 400 distributors and 351 Winsor distributors. Hutcherson identified a photograph of the van seen at his scrap yard, and the photograph showed 204 Ford 400 distributors and 29 351 Winsor distributors. He stated their value was $4,000. Hutcherson testified the van and distributors were taken to the Halls City Police Department where these items remained for a week. Hutcherson had an employee, Bubba Humphreys, count the distributors with the assistance of Joe Hardy of the Halls City Police Department.

At the end of this week, the distributors were returned to Hutcherson who stored them in a building on his lot at 14293 Highway 210, until the first hearing. When the hearing got bumped, the Lauderdale County Sheriff's Department took custody of the distributors until two weeks before the trial. The Sheriff's Department was limited on storage space. Hutcherson stated he obtained the distributors and secured them. He identified several photographs of the distributors which were introduced as Exhibit 2, collectively.

During cross-examination, Hutcherson acknowledged the barrel behind the van doors was empty. He insisted that "I witnessed the man loading the remainder of the barrel into the van." Although Defendant did not run from the scene, Hutcherson stated, prior to the police's arrival, the Defendant got up and went to get in the passenger door of the van, when Hutcherson threw him to the ground.

Joe Purcell, Chief of Police, Halls, Tennessee, testified he received a theft call to Hutcherson's scrap yard. He observed a van backed up to a building with its back doors open. The owner of the yard had caught Defendant loading material into the van. Chief Purcell arrested Defendant and advised him of his rights. The van was secured and taken to Halls City Police Department. Chief Purcell stated Defendant was covered in grease which appeared to have come from the distributors. The van was released to Mary Midget, the Defendant's sister, and her boyfriend. After making a photograph of the distributors, they were returned to Hutcherson, since the police department has no storage facilities. Chief Purcell acknowledged no fingerprints were taken.

On March 22, 1999, Bubba Humphreys, an employee for Hutcherson Metals, testified he went to the police department and counted some distributors in a van. There were over 200 distributors in the van, but he could not determine what their value might be. He stated the distributors were put into the back of a truck and taken to a storage building on Old Highway 51, North. He agreed they were not secured.

On behalf of the defense, Larry Wayne Thompson, an employee of Hutcherson Metals, testified he was called by Chief Purcell about a van owned by him which was involved in a burglary.

Chief Purcell advised Thompson that Defendant had been arrested for theft. Thompson stated he picked the van up a week later after the distributors had been removed. Thompson acknowledged that Mary Midget is his girlfriend and the Defendant's sister. Also, Midget had used the van that morning to take her children to school, but Thompson never gave the van to the Defendant.

During jury deliberations, Defendant moved to have the trial court call his "elbow counsel" Ms. Pillow to testify as to discovery. Ms. Pillow testified that the photographs were the only evidence she received from the State that was intended for trial. She stated that at the preliminary hearing, the victim stated the items had been returned to him but she was not advised they were kept separate and apart or secured in any way, and was never advised that the State intended to present physical items at trial. Ms. Pillow stated that the State complied with her discovery motion of July 14, 1999, by giving her photographs of the items. During cross-examination, Ms. Pillow stated she never requested a review of the distributors during discovery, as she thought they had been used in the victim's business, but did receive photographs of the distributors.

LEGAL ANALYSIS

Defendant asserts that the State failed to comply with Rule 16 of Tenn. R. Crim. P. in that he was denied an opportunity to examine and inspect any physical evidence at trial. Defendant requests any relief he is entitled. The State contends that the trial court did not abuse its discretion in denying Defendant's last minute request to suppress evidence.

DISCOVERY - RULE 16

In June of 1999, without a formal motion being filed, the trial court entered a pre-trial order granting discovery pursuant to Rule 16, Tennessee Rules of Criminal Procedure. In pertinent part, Rule 16 (1)(C), Tennessee Rules of Criminal Procedure, provides an opportunity for a defendant to obtain or access documents and tangible objects that will be utilized by the State at trial.

(C) Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant.

Also, the Rule provides:

(d)(2) Failure to Comply with a Request. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing the evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place, and

manner of making the discovery and inspection and may prescribe such terms or conditions as are just.

The admissibility of evidence is generally within the broad discretion of the trial court; absent an abuse of that discretion, the trial court's decision will not be reversed. *State v. Edison,* 9 S.W.3d 75, 77 (Tenn. 1999). If there has been non-compliance, the trial court has great discretion in fashioning a remedy. The sanction applied must fit the circumstances of the individual case. *State v. James,* 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984); *State v. Cadle,* 634 S.W.2d 623, 625 (Tenn. Crim. App. 1982). Evidence should not be excluded except when it is shown that a party is actually prejudiced by the failure to comply with discovery and that the prejudice cannot be otherwise eradicated. *State v. James,* 688 S.W.2d at 466. Likewise, the Rule applies to tangible items "within the possession, custody or control of the state." In this cause, the distributors were in the possession of the owner for a substantial period of time, which includes two trial appearances. The State's failure to provide the items for examination or inspection does not violate the discovery rule. *State v. Hutchison,* 898 S.W.2d 161, 167-68 (Tenn. 1994); *State v. Harris,* 30 S.W.3d 345, 349 (Tenn. Crim. App. 1999).

The record reflects that the distributors in question and the van were taken from the crime scene to the Halls Tennessee Police Department, where photographs were taken of each item. A week later, the van was released to Defendant's sister and the distributors were returned to the owner. The record is not clear that the distributors were present for the preliminary hearing, but Defendant was aware they had been returned to the owner. However, at the first trial the distributors were present. A reasonable inference is that Defendant saw these distributors at the first trial. Nevertheless, Defendant or at least his defense counsel had photographs of the distributors pursuant to the discovery order. The record reflects the jury observed the distributors at the commencement of the trial, but photographs of these distributors were admitted for the benefit of the jury. Defendant was on notice, at least twice, that the owner had possession of the distributors at trial time. Defendant failed to request an opportunity to personally inspect the distributors or seek a continuance. Also, Defendant has failed to demonstrate any prejudice or how his inability to inspect the distributors materially affected his trial. Although Defendant objected to the distributors being entered into evidence, photographs of the same were admitted. Thus, physically the distributors were not made a part of this record. We hold the trial court did not abuse its discretion in overruling Defendant's objection as to the distributors. There is no merit to the issue of a Rule 16 violation.

## CHAIN OF CUSTODY

Defendant asserts that the distributors should not be entered into evidence or shown in value, due to the fact that the evidence is tainted. The State counters that there was no error in the presence of the distributors.

It has been established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody. *State v. Holbrooks,* 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). However, the failure to call all of the

witnesses who handled the evidence does not necessarily preclude its admission into evidence. *Id. See State v. Johnson,* 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984). While the State is not required to establish facts which exclude every possibility of tampering, the circumstances established must reasonably assure the identity of the evidence and its integrity. *Id.* This issue addresses itself to the sound discretion of the trial court, and the court's determination will not be disturbed in the absence of a clearly mistaken exercise of such discretion. *Id. See State v. Beech,* 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987).

We agree with the State that the trial court did not abuse its sound discretion in permitting testimony concerning the handling of the distributors in this cause. The trial transcript, including Defendant's adequate cross-examination, established that the distributors seen in Defendant's van were adequately accounted for up and until trial. The owner explained as to how he recovered the distributors from the Halls City Police Department, their storage in one of his buildings, and then their presentation at two trial appearances. Likewise, the record established that every person who came into contact with the distributors from their seizure in Defendant's van to trial testified as to their knowledge; the victim, Chief Joe Purcell, Halls City Police Department, and Bubba Humphreys, employee of the victim, with the exception of officer Joe Hardy. Defendant's cross-examination of the victim and Bubba Humphreys was quite clear as to the security of the distributors or the lack thereof. Apparently, the jury was satisfied with the explanation surrounding the presentation and preservation of the distributors, in that, in their collective wisdom, the offense should be reduced to theft less than $500. There is no merit to this assignment of error.

The trial court's judgment is affirmed.

_____
L. TERRY LAFFERTY, SENIOR JUDGE