# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned On Briefs September 14, 2011

## STATE OF TENNESSEE v. FREDERICK EDWARD BRAXTON

**Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2845     Mark J. Fishburn, Judge**

---

**No.  M2010-01998-CCA-R3-CD - Filed November 15, 2011**

---

Appellant, Frederick Edward Braxton a/k/a Frederick Frank Brown, was convicted  by a Davidson County Jury of selling less than .5 grams of cocaine within 1000 feet of a school, evading arrest, and criminal impersonation.  On appeal, Appellant complains that: (1) the indictment did not adequately charge Appellant with selling a controlled substance in a drug-free school zone; (2) the State did not establish a sufficient chain of custody prior to the introduction of the cocaine into evidence; and (3) the evidence was insufficient to establish that he sold cocaine in a drug-free school zone.  After a review of the record, we determine the indictment was not invalid for failing to reference the Drug Free School Zone Act because it adequately described the offense.   Further, we determine that the trial court did not abuse its discretion in admitting the cocaine into evidence and that the evidence was sufficient to establish that Appellant sold cocaine weighing less than .5 grams within 1000 feet of a Drug Free School Zone.  Accordingly, the judgments of the trial court are affirmed.


**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Jeffrey A. DeVasher, Assistant Public Defender, (on appeal) and Melissa Harrison, Assistant Public Defender, (at trial) Nashville, Tennessee, for the appellant, Frederick Edward Braxton.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Victor S. Johnson, District Attorney General, and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Appellant was indicted in July of 2009 by the Davidson County Grand Jury for one count of the sale of less than .5 grams of cocaine within 1000 feet of a school, one count of possession of .5 grams or more of cocaine with the intent to sell within 1000 feet of a school, one count of evading arrest, and one count of criminal impersonation. Prior to trial, the State amended the indictment for the evading arrest charge to omit language relating to death or serious bodily injury.

The case proceeded to a trial before a jury. At trial, Detective Matthew Atnip of the Metro Nashville Police Department recalled the events leading to Appellant's arrest. In October of 2007, Detective Atnip was assigned to the Hermitage Crime Suppression Unit. Detective Atnip was working with Detective Josh Walters on an undercover "buy bust operation" that targeted street-level drug dealers. The two detectives wore plain clothes and traveled in the area around Murfreesboro Road in an undercover vehicle. Several other members of the Crime Suppression Unit assisted in the operation.

On October 8, 2007, Detective Atnip drove the undercover vehicle to a Mapco gas station at the corner of Murfreesboro Road and Thompson Lane. He saw Appellant walking either to or from a Cadillac. Detective Walters asked Appellant if he had any "work," a slang term for drugs. Appellant stated that he did not have any drugs. At that time, the undercover officers drove away, heading down Murfreesboro Road toward downtown.

Detective Atnip next pulled into another gas station on Murfreesboro Road near Spence Lane and the Waffle House. The vehicle was backed into the parking space near the pay phone. A few minutes later, Appellant pulled up next to them in his vehicle and asked the men what they needed. Detective Walters told Appellant that they wanted a "40" of crack cocaine. Appellant told the men it was "hot," meaning that there were police in the area, and asked them to follow him down the road. The detectives followed Appellant in his car to the intersection of Blanton and Hill Avenues. Detective Atnip pulled his car next to Appellant's car.

Appellant asked the men if they were police officers. The detectives denied being police officers. According to the detectives, Appellant handed Detective Walters three or four loose rocks of crack cocaine. Detective Walters tried to hand Appellant the forty dollars for the drugs; Appellant told him to throw it to the ground. Detective Walters complied. Detective Atnip drove away from the scene, giving the takedown signal to the other officers involved in the operation. By the time the officers approached with lights and sirens,

-2-

Appellant had turned his car around so that he could pick up the money. Appellant took off, "squealing his tires" and heading toward Hill Avenue. Appellant was surrounded and taken into custody. Detective James Anthony King, who was also a part of the investigation, recalled that the arrest of Appellant took place near the intersection of Blanton and Hill Avenue, near Murfreesboro Road.

Appellant gave his name as "Frederick Jones" and "Frederick Brown" when he was read his *Miranda* rights. Detective Walters thought that Appellant was actually "booked" as "Frederick Brown." At some point during the arrest, Appellant stated that he "just f[ ] up" and should "lay down" and go to "jail."

Following the arrest, Detective Atnip went to the location of the drug purchase and recovered a bag that contained a large white rock. The substance tested field positive for cocaine. As part of the investigation, Detective Atnip filled out the property and evidence form. He listed two pieces of evidence: a bag containing four loose rocks and a large bag containing one rock. Detective Walters also recalled that the crack cocaine rocks that Appellant sold to him and the cocaine that was later found on the ground by Detective Atnip were turned in to the evidence room. The evidence technician, Issac Martinez, testified at trial that he receives evidence in the property room, assigns it a tracking number, logs it into a computer, and secures it in a safe. He also is charged with delivering evidence to the Tennessee Bureau of Investigation ("TBI") for examination. Mr. Martinez delivered the evidence in the case herein to the TBI for analysis twice. He was not aware of any evidence tampering.

Jacquelyn Poarch, a forensic technician for the TBI received the evidence from Appellant's case on January 18, 2008, from Mr. Martinez. She checked the information on the package and confirmed that it matched the information on the corresponding submittal form that she had already received from Metro Nashville Police. Ms. Poarch then entered the information into the TBI system, gave it a unique number, and stored it in a vault. In May of 2009, the evidence was resubmitted to Jennifer Gillis, a second forensic technician at TBI. The evidence was returned to Metro Nashville on June 5, 2009. The contents of the bag were later tested by TBI scientist Ella Carpenter on two separate occasions. She verified the packaging to ensure it corresponded to the evidence. On February 8, 2008, Ms. Carpenter analyzed a sealed plastic bag that contained 2.8 grams of cocaine. She did not test the additional amount of cocaine in the bag because it was not enough to increase the penalty. In other words, the amount of cocaine was less than twenty-six grams, the statutory threshold for a greater penalty. The report indicated that "[n]o analysis was performed on additional

rock-like substance. The gross weight of this additional rock-like substance is 3.4 grams.[1] The total[] weight for all the rock-like substances would not exceed 26 grams." Ms. Carpenter tested the substance and determined that it was, indeed, crack cocaine, weighing 2.8 grams.

In May of 2009, the district attorney's office requested that the remainder of the substance be tested by the TBI. It was tested by Ms. Carpenter on June 1, 2009. The report was issued on June 2. The remaining substance was also determined to be cocaine, weighing .4 grams. Ms. Carpenter did not recall any irregularities with the evidence packaging.

The crack cocaine was estimated to be worth between $90 and $180.

Steve Keel, Director of School Security for Metro Nashville Public Schools, testified at trial that Nashville School of the Arts is located at 1250 Foster Avenue in Davidson County. The school was in operation on October 8, 2007.

David Kline, the manager of the mapping division for Metropolitan Planning Department, prepared a map of the area in anticipation of trial. The map outlined an area 1000 feet around the Nashville School of the Arts. According to the map, the intersection of Blanton Avenue and Hill Avenue was within 1000 feet of the property of Nashville School of the Arts. In fact, the intersection is 822 feet away from the property line of the school.

Appellant took the stand in his own defense. He described himself as an "entertainer" trying to break into the music industry. On October 8, 2007, Appellant was at the Mapco Station to meet a friend, Pamela Sircy. Appellant was going to give Ms. Sircy a CD so that she could pass it along to her "connections" on Music Row.

Appellant testified that he went into the store to buy some items for Ms. Sircy when he noticed a new Mustang vehicle outside. He saw two men inside the car. They asked him for "something." Appellant claimed that he told the men to go away, and he walked to his car. Appellant could sense that the men were police officers. Appellant insisted that he did not sell drugs and had no drugs on him that night.

Appellant told the men to go away when they asked him for drugs a second time. Appellant testified that at some point, he heard a CB radio go off inside the Mustang. Appellant claimed that he knew the men were police.

---

[1] This includes the weight of the packaging. Ms. Carpenter later explained that the gross weight of the cocaine was 3.2 grams.

Appellant left the gas station in his car. He claimed that the Mustang was following him. Appellant planned to get on the interstate when a car cut in front of him. Appellant kept going straight and tried to perform a U-turn. Appellant saw a "No U-turn" sign, so he turned on Blanton Avenue. When he drove down the street to turn around, the Mustang pulled in front of him and two other cars activated their blue lights, blocking him in on the street. Appellant claimed that the police jumped out of their cars with their guns drawn and that he did not make it to the intersection of Blanton and Hill before this happened.

According to Appellant, the police never asked his name. They made him get out of the car, searched him, and cuffed him. Appellant claimed that the police told him to "shut up" when he asked what was going on that night. Appellant insisted that he did not give a false name to police, instead he told them that his identification was inside his pocket. Appellant admitted that he used the alias Frederick Frank Brown when he was a teenager but claimed that he has not used it since. Additionally, Appellant admitted that he was driving on a suspended license.

At the conclusion of the proof, the jury convicted Appellant of selling less than .5 grams of cocaine within 1000 feet of a school, evading arrest, and criminal impersonation. Appellant was sentenced to a total effective sentence of fifteen years. After the denial of a motion for new trial, Appellant filed a timely notice of appeal.

On appeal, Appellant claims that the indictment was insufficient, the State did not establish a sufficient chain of custody for the cocaine, and the evidence was insufficient.

*Analysis*

*Sufficiency of the Indictment*

First, Appellant claims that the indictment is void because it fails to "adequately charge [Appellant] with selling a controlled substance within a drug-free school zone." Specifically, Appellant argues that because the indictment fails to reference the drug-free school zone statute, Tennessee Code Annotated section 39-17-417, the indictment is void. The State disagrees.

The indictment in the instant case states that Appellant:

> On the 8th day of October, 2007, in Davidson County, Tennessee and before the finding of this indictment, knowingly did sell less than .5 gram of a substance containing cocaine, a Schedule II controlled substance, on the grounds of facilities within one

thousand (1000) feet of the real property that comprises a public or private elementary school, middle school, or secondary school, in violation of Tennessee Code Annotated § 39-17-417, and against the peace and dignity of the State of Tennessee.

The three purposes of an indictment are to give notice to the accused of what crime he is charged with having committed, enable the trial court to enter a proper judgment upon conviction, and to protect the defendant from being placed in double jeopardy. *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991). So long as the offense is adequately described in the indictment so as to serve the three purposes set out above, it is sufficient even if it fails to allege the code section allegedly violated. *Malone v. State*, 707 S.W.2d 541, 543 (Tenn. Crim. App. 1985); *Randall Edwin Cobb v. State*, No. W2004-00156-CCA-R3-HC, 2005 WL 396379, at *2 (Tenn. Crim. App. Feb. 14, 2005), *perm. app. denied*, (Tenn. Aug. 22, 2005) (holding that indictment using language from the Drug Free School Zone Act gave the defendant sufficient notice of the charges even though the indictment did not cite Tennessee Code Annotated § 39-17-432). *Cobb* is directly on point with the instant case. Appellant was given clear notice that he was charged with committing drug offenses within a school zone. The failure to reference the school zone statute, Tennessee Code Annotated section 39-17-432 does not render the indictment invalid and provides Appellant with no grounds for relief.

*Chain of Custody*

Appellant admits that he was charged with two separate drug offenses that involved two separate substances that were "allegedly" seized by police on the night of his arrest. According to Appellant, because the jury acquitted him in Count Two, the "jury found that [Appellant] sold part of the cocaine at issue, but did not possess all of the substances seized by police on the night of his arrest." Specifically, Appellant claims that the State failed to show that the loose rocks he allegedly sold to police were identifiable in "exhibit 3" and formed the basis for his conviction in Count One. The State contends Appellant's argument has no merit.

On issues of evidence authentication or identification, "[t]rial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). Rule 901(a) of the Tennessee Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility [of evidence] is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." The testimony of a witness with knowledge "that a matter is what it is claimed to be" is sufficient. Tenn. R. Evid. 901(b)(1). Once this

-6-

foundation has been established, the "trier of fact then makes the ultimate decision of whether the item is actually what it purports to be." Neil P. Cohen et al., *Tennessee Law of Evidence* § 9.01[2][a] (5th ed. 2005).

Additionally, before tangible evidence may be introduced, the party offering the evidence must either call a witness who is able to identify the evidence or must establish an unbroken chain of custody. *State v. Holloman*, 835 S.W.2d 42, 46 (Tenn. Crim. App. 1992). However, it is not necessary to call all potential witnesses who handled a piece of evidence so long as there is reasonable assurance that the evidence offered for admission is the same evidence seized. *State v. Woods*, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1991); *State v. Johnson*, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984).

At trial, the drugs were introduced after the testimony of Ms. Carpenter from the TBI. Defense counsel objected, arguing that the chain of custody was not proven. Defense counsel renewed the objection at the close of the State's proof. The trial court overruled both motions. The proof at trial showed that Detective Atnip filled out the property and evidence form. He noted that there was one bag containing four loose rocks and another bag containing a single rock. The loose rocks were from the sale, the single rock was recovered at the scene. The items were listed separately on the property submittal form. Detective Atnip testified that he followed proper protocol in submitting the evidence. Detective Walters corroborated Detective Atnip's testimony. Likewise, Mr. Martinez of the property and evidence division logged the evidence into the computer and followed proper protocol, eventually delivering it to Ms. Poarch at the TBI for analysis. Ms. Poarch testified of the procedure followed by the TBI to ensure the management of the evidence. Ms. Poarch was able to identify two small bags that were contained in a larger evidence bag during the trial. She reported that one bag contained 2.8 grams of cocaine and the other bag contained .4 grams of cocaine. The State called multiple witnesses to establish the chain of custody of the cocaine from the time of the arrest through the testing at the TBI. The trial court did not abuse its discretion in admitting the cocaine into evidence. This issue is without merit.

*Sufficiency of the Evidence*

Lastly, Appellant challenges the sufficiency of the evidence arguing that the evidence did not establish that the "alleged transaction occurred within a drug-free school zone as required to prove the offense for which he was convicted in Count 1." Specifically, Appellant contends that the proof did not establish the exact location of the sale, therefore, the State could not prove that the sale was executed within 1000 feet of the school. The State insists that the evidence was sufficient to support the conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant was convicted of the sale of cocaine that weighed .5 grams or less, a violation of Tennessee Code Annotated section 39-17-417(a)(3), which makes it a crime to knowingly "possess a controlled substance with intent to manufacture, deliver or sell the controlled substance." A violation of Tennessee Code Annotated section 39-17-417(a)(4) is a class C felony if the amount of the cocaine possessed is less than .5 grams. T.C.A. § 39-17-417(c)(2)(A). An enhanced criminal penalty is imposed if the drug sale occurs within 1000 feet of a drug-free school zone. T.C.A. § 39-17-432. Specifically, if a violation of Tennessee Code Annotated section 39-17-417 occurs "within one thousand feet (1000') of the real property that comprises a public or private elementary school, middle school, secondary school, [or] preschool . . . [the offender] shall be punished one classification higher than is provided . . . ."

In the case herein, there was testimony from several officers that the transaction took place at the corner of Blanton and Hill Avenues near Murfreesboro Road. While the exact location of the arrest was not pinpointed to the foot, the testimony indicated that the arrest

took place near the intesection. The Director of School Security for Metro Nashville Schools testified that Nashville School of the Arts is located at 1250 Foster Avenue in Davidson County. Mr. Kline, manager of the mapping division of Metro Nashville Planning Department, provided a map that showed the intersection of Blanton and Hill Avenues was 822 feet from the property line of the school. This evidence was heard and assessed by the jury, and that panel determined that the State proved beyond a reasonable doubt that the transaction occurred within 1000 feet of a school. The evidence was sufficient for a rational trier of fact to make this determination. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JERRY L. SMITH, JUDGE