# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 15, 2013

## STATE OF TENNESSEE v. MICHAEL BARNES

**Appeal from the Criminal Court for Johnson County**
**No. 5911      Jon Kerry Blackwood, Judge**

---

**No. E2013-01375-CCA-R3-CD - Filed March 4, 2014**

---

The Defendant, Michael Barnes, challenges his jury conviction for possession of contraband in a penal institution, alleging that the following errors were made at his trial: (1) that the chain of custody regarding the contraband was not sufficiently established; (2) that the stun belt he was forced to wear during his trial violated his due process rights; and (3) that the evidence was insufficient to establish his guilt. Upon consideration of the record and the applicable authorities, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Jeffery C. Kelly, District Public Defender; Melanie Sellers (at motion for a new trial and on appeal) and Joy Phillips (at trial), Assistant Public Defenders, for the appellant, Michael Barnes.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Anthony Wade Clark, District Attorney General; and Matthew Roark, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

The Defendant, while incarcerated in the Northeast Correctional Complex (NCC), was indicted for "knowingly possess[ing] ten (10) Buprenorphine tablets, a Schedule III controlled substance," which is a Class C felony. See Tenn. Code Ann. § 39-16-201. Counsel was appointed to represent the Defendant, and a trial date was set.

Just before trial began, the Defendant was led into the courtroom in the presence of the jury, still outfitted in his restraints. The defense attorney then demanded that the officers remove the Defendant from the courtroom. Upon the Defendant's return, the jury was excused, and the defense requested a mistrial based on the jury seeing the Defendant in his restraints. A hearing was held to determine what occurred because the trial court stated that it did not see the Defendant enter the courtroom in restraints. At the hearing, Corporal David Torbett testified that the Defendant was wearing "full restraints" when he entered the courtroom. Corporal Torbett explained that he was told to remove the restraints "when they got started" and explained that he was not aware that the jury was in the courtroom when he brought the Defendant in. In describing the restraints, Corporal Torbett was asked specifically about the "electric thing" around the Defendant's waist, to which he simply stated that the stun belt was not visible; the topic was not explored any further. Corporal Torbett testified that the Defendant was in the courtroom approximately twenty seconds before he was instructed to remove the Defendant from the courtroom. After this testimony, the trial court took the mistrial motion under advisement. The jury pool was then polled individually to determine how many potential jurors had seen the Defendant in restraints; several jurors responded that they had seen the Defendant enter the courtroom in restraints and were dismissed.

The following evidence was presented at the Defendant's trial on June 9, 2012.

Billy Murray, a correctional officer employed at NCC, testified that he was conducting random searches of the inmates' cells on March 22, 2010, and that he searched the Defendant's cell and person during this random search. Officer Murray testified that he found a bag of pills wrapped in plastic in the Defendant's pocket. The Defendant did not say anything when the pills were found. Officer Murray then took those pills to the shift supervisor, Lieutenant Donald Henson.

Lt. Henson, a correctional lieutenant employed at NCC, testified that Officer Murray brought him some pills on March 22, 2010, that had been found on the Defendant. He stated that he did not recall how the pills were wrapped, just that Officer Murray handed him some pills in a bag. He never took the pills out of the bag but testified that the pills presented in court appeared to be the same pills. Lt. Henson testified that he then logged the pills into evidence, and the pills were placed in a secured evidence locker in the operations area.

James Allen, employed as a shift captain at NCC, testified that he was a shift lieutenant at NCC when the instant offense was committed. He explained that, in that capacity, he was charged with signing the evidence into the evidence locker, and someone else would sign it back out. Capt. Allen testified that he signed a package containing ten

Suboxone[1] pills out to Craig Julian for testing. He explained that the pills were already packaged and tagged but that the pills presented at trial appeared to be the ones seized from the Defendant. Capt. Allen stated that after he signed the chain of custody form, he did not see the pills again.

Craig Julian, employed as an institutional investigator at NCC, testified that he was assigned to investigate the Defendant's case. As a result, he interviewed the Defendant. Investigator Julian relayed that, during their conversation, the Defendant admitted ownership of the pills and said he bought them but would not say where he got the pills. Inv. Julian testified that the pills were kept in a locker in his office and that he was the only one with a key. He also testified that he used a "Drug Bible" to identify the pills and determine whether to send the pills to the Tennessee Bureau of Investigation (TBI) for testing. Inv. Julian explained, "[The Drug Bible wa]s a book that ha[d] all kinds of different drugs in it that we'd purchased . . . it's got all the names and numbers of the pills in there. You can look at the pill and it's got a number on it and you can look -- and reference it and find out what it is."

Later, the pills were sent to the TBI. Inv. Julian relayed that the test revealed that the pills contained Suboxone, that the district attorney's office was informed of the results, and that the case was presented to the grand jury. He then explained that, some time later, the district attorney requested that the pills be tested again because the agent who originally tested the pills was no longer employed with the TBI and had since moved out of state. Inv. Julian testified that every time he signed the pills out, it "was to send them to the crime lab, and then when they came back[, he] put them back into the evidence locker and then back and forth" until the day of trial.

Sharon Norman, employed as a forensic drug chemist at the TBI Knoxville crime lab, testified that she was the second analyst to test the pills submitted for analysis from NCC. Agent Norman further testified that she tested one of the pills submitted and determined that it contained Suboxone. She also testified that after her analysis, the pills were placed into a secure vault until they were returned to NCC. Agent Norman admitted that the pills were packaged differently at trial from when she placed then in the vault.

At the conclusion of the State's proof, the Defendant moved for a judgment of acquittal, which was denied, and the Defendant did not present any evidence. After deliberations, the jury found the Defendant guilty of possession of contraband in a penal institution and assessed a $2,500 fine. On October 5, 2012, the Defendant was sentenced as a career offender to fifteen years for this offense, to be served consecutively to all previous

---

[1] The record established that Suboxone is another name for Buprenorphine.

sentences; the judgment was entered on October 13, 2012.[2]

The Defendant filed a motion for a new trial on November 7, 2012; an amended motion was filed on March 11, 2013; and a hearing on the consolidated motions was held on March 28, 2013. The trial court denied the Defendant the relief requested on April 8, 2013, via order, finding that the chain of custody had been properly established and that the Defendant had waived its review of the stun belt issue for failing to bring the issue to the court's attention. The trial court explained that it believed that the stun belt had been removed when the issue of the Defendant's restraints was addressed prior to trial. The Defendant filed a notice of appeal on April 17, 2013.

ANALYSIS

On appeal, the Defendant contends that the following errors were made at his trial: (1) that the chain of custody regarding the contraband was not sufficiently established; (2) that the stun belt he was forced to wear during his trial violated his due process rights; and (3) that the evidence was insufficient to establish his guilt. The State responds that the Defendant has waived appellate review of the first two issues for failing to raise them at trial. Regarding the third issue, the State responds that the evidence is sufficient to sustain the Defendant's conviction.

*I. Waiver of Issue (1): Chain of Custody*

We agree with the State that the Defendant has waived appellate review of this issue, that the chain of custody regarding the pills was not sufficiently established, for failure to contemporaneously object at trial. See Tenn. R. App. P. 36(a). However, this court may review issues normally considered waived pursuant to the plain error doctrine. See Tenn. R. App. P. 36(b); State v. Hatcher, 310 S.W.3d 788, 808 (Tenn. 2010).

*A. Plain Error Review*

The doctrine of plain error only applies when all five of the following factors have been established:

(1) the record clearly establishes what occurred in the trial court;

_____

[2] A corrected judgment form was filed on November 13, 2012, to correct a clerical error which left the offender range classification blank.

(2) the error breached a clear and unequivocal rule of law;

(3) the error adversely affected a substantial right of the complaining party;

(4) the error was not waived for tactical reasons; and

(5) substantial justice is at stake; that is, the error was so significant that it "probably changed the outcome of the trial."

Hatcher, 310 S.W.3d at 808 (quoting State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000)). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." State v. Page, 184 S.W.3d 223, 231 (Tenn. 2006).

We review challenges to the chain of custody of evidence under the abuse of discretion standard. State v. Cannon, 254 S.W.3d 287, 295 (Tenn. 2008) (citing State v. Scott, 33 S.W.3d 746, 752 (Tenn. 2000)); State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987). Accordingly, this court will not reverse the trial court's ruling on the chain of custody "unless the trial court 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining .'" Id. (quoting State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999)).

"As a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody." State v. Kilpatrick, 52 SW.3d 81, 87 (Tenn. Crim. App. 2000) (citing State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982)). The purpose of this requirement is to "demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." See id. (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)).

Even though each link in the chain of custody should be sufficiently established, this rule does not require that the identity of tangible evidence be proven beyond all possibility of doubt; nor should the State be required to establish facts which exclude every possibility of tampering. Cannon, 254 S.W.3d at 296 (citing Scott, 33 S.W.3d at 760). An item is not necessarily precluded from admission as evidence if the State fails to call all of the witnesses who handled the item. Id.; see State v. Johnson, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984). Accordingly, when the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence. Id. However, if the State does not offer sufficient proof of the chain of custody, the "evidence should not be admitted ... unless both identity and integrity can be demonstrated by other appropriate means." Scott, 33 S.W.3d at 760 (quoting Cohen et. al., Tennessee Law of Evidence § 901.12, at 624 (3d ed. 1995)).

Although the record before us clearly establishes what occurred in the trial court, it

does not demonstrate that a clear and unequivocal rule of law was breached. The Defendant's argument to the contrary is that none of the State's witness could "clearly identify the pills[,]" that the State failed to call two of the witnesses on the chain of custody form, and that "the record . . . fails to prove when, how, or why the condition of the evidence was changed." As to the latter, he points out that Agent Norman testified that the pills presented at trial were packaged differently than they were when she tested them and that no one testified as to how or when the pills were repackaged. Again, we note that reasonable assurance, rather than absolute assurance, is the prerequisite for admission. See Cannon, 254 S.W.3d at 296. The testimony presented at trial was sufficient to establish all links in the chain of custody, despite the Defendant's allegation to the contrary. While the record does establish that the pills were packaged differently at trial than they were after Agent Norman completed her testing, the Defendant has failed to show that "that there has been [any] tampering, loss, substitution, or mistake with respect to the evidence." Id.

The record clearly shows that the pills were taken from the Defendant by Officer Murray and given to Lt. Henson who placed the pills in a secure locker. Capt. Allen, as shift lieutenant, signed the evidence into the secure locker and later released the pills to Inv. Julian for testing. Inv. Julian identified those pills, via the "Drug Bible" as Suboxone, and sent them to the TBI for testing, and the pills were verified to contain Suboxone. These same pills were tested again by Agent Norman, who confirmed that the pills were in fact Suboxone and that they had been previously tested by a former TBI agent. As such, it was reasonable and logical for the trial court to conclude that the chain of custody had been established; the Defendant has failed to show that a clear rule of law was breached.

*II. Use of Stun Belt During Trial*

The Defendant contends that the trial court erroneously found that the Defendant's challenge to being forced to wear a stun belt at trial had been waived. He further contends that his motion for a mistrial after he was led into the courtroom in physical restraints, in the presence of the potential jury pool, preserved this issue as the stun belt is a physical restraint. The State responds that the Defendant has waived review of this issue because the Defendant failed to "complain of this issue prior to trial" and that he is not entitled to relief on this issue because he "failed to take action and has shown no prejudice." We agree with the State.

The trial court's decision whether to deny a motion for a new trial is within its sound discretion. See Tenn. R. Crim. P. 33. A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999).

It is well-settled that relief will not be granted "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Despite the Defendant's contention that his motion for a mistrial preserved this issue on appeal, our review of the motion and subsequent hearing reveals that the Defendant neither specifically took issue with the stun belt nor did he clearly indicate that the stun belt remained on his person after Corporal Torbett's testimony regarding his restraints. In fact, the following exchange is the only time that any reference was made to the stun belt:

Q      All right. And it's a chain plus some sort of an electric thing hooked on there, right?

A      That is not on the outside, and it is not visible.

Q      You can't see that part, okay.

Here, defense counsel seemed to concede that use of the "electric thing" was "okay" because "it [wa]s not visible." After this brief discussion, the stun belt was never mentioned again nor was there any indication that the stun belt remained on the Defendant after the visible restraints had been removed. Therefore, we cannot say that the trial court's assumption that the restraints had been removed and its subsequent determination that, for that reason, the issue had been waived was in error. We also note that the Defendant proffered no argument at the motion for new trial hearing nor on appeal explaining how the stun belt's presence on his person during trial affected his due process rights. See State v. Mobley, 397 S.W.3d 70, 101 (Tenn. 2013) ("The trial court should consider the relevant circumstances against the backdrop of affording the defendant the physical indicia of innocence, ensuring the defendant's ability to communicate with counsel, protecting the defendant's ability to participate in his or her defense and offer testimony in his or her own behalf, and maintaining a dignified judicial process."). As such, the Defendant is not entitled to relief on this issue.

### III. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to support his conviction because the State failed to prove an essential element of the offense: "that the item allegedly removed from [the Defendant] was in fact the same item tested by TBI[,] or the same presented in court the day of trial, or that it is in fact a controlled substance." The State responds that the evidence sufficiently established that the Defendant was guilty of introducing contraband into a penal institution. We agree.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Tennessee Code Annotated section 39-16-201(b) provides, as relevant to this appeal, that it is unlawful for any person to

> (1) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances found in chapter 17, part 4 of this title;

> (2) Knowingly possess any of the materials prohibited in subdivision (b)(1) while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution.

Tenn. Code Ann. § 39-16-201(b)(1)-(2). "'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Id. §39-11-302(b).

We preliminarily note that the Defendant is essentially restating his argument that the State failed to establish the chain of custody regarding the pills at issue. However, as we have already concluded that the chain of custody issue does not merit plain error review, we decline to delve into that issue in our sufficiency analysis.

Turning to our review of the sufficiency of the convicting evidence, when viewed in a light most favorable to the State, the evidence shows that the Defendant was incarcerated at NCC when Officer Murray conducted a search of the Defendant's person and found him to be in possession of some pills. The Defendant later admitted to Inv. Julian that the pills belonged to him. Agent Norman of the TBI testified that the pills found on the Defendant were Buprenorphine, a Schedule III controlled substance. Presented with this evidence, it

was reasonable for the jury to find the Defendant guilty of possession of contraband in a penal institution.

CONCLUSION

Based on the foregoing, we affirm judgment of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE