IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 23, 2012

## STATE OF TENNESSEE v. JUSTIN PARLIMENT

**Appeal from the Circuit Court for Hickman County**
**No. 09-5206CRB      Robbie T. Beal, Judge**

_____

**No. M2011-00520-CCA-R3-CD - Filed May 23, 2012**

_____

The defendant, Justin Parliment, appeals from his Hickman County Circuit Court jury conviction of possession of a controlled substance in a penal institution, *see* T.C.A. § 39-16-201(b)(2) (2006), claiming that the evidence was insufficient to support his conviction, that the trial court erred in its instructions to the jury, that the State failed to establish a proper chain of custody for the marijuana introduced into evidence, that the fine imposed by the jury is excessive, and that the sentence imposed by the trial court is excessive.  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and JEFFREY S. BIVINS, JJ., joined.

J. Gregory Burlison, Assistant Public Defender, for the appellant, Justin Parliment.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Kim R. Helper, District Attorney General; and Sean Bernard Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Hickman County Circuit Court jury convicted the defendant of possession of a controlled substance in a penal institution based upon proof that he possessed 78 grams of marijuana inside Turney Center Industrial Prison on April 12, 2009.

At trial, corrections officer Heather Scott testified that she was in the control room monitoring a live feed from cameras located in the secured visiting area of the prison

on April 12, 2009. She said that she paid particular attention to the defendant and his female visitor because "[i]t was about 40 degrees outside. They were the only people that went outside." As she watched the couple, the female visitor left the table and went into the restroom. Officer Scott described what happened when the woman returned from the restroom: "She returned to the table and she pulled her britches out and reached in her pants and passed on something beside of her. She laid it on the chair beside of her. And Mr. Parliment reached over and got it and put it in his pants." After viewing this exchange, Ms. Scott called Corporal Jason Clendenion "to take care of it." She said that Corporal Clendenion "called the people he needed to call and went out there" and that, once outside, the officers "took [the defendant] into custody and [were] going to take him and search him."

During cross-examination, Ms. Scott admitted that she did not actually see the object that was passed between the defendant and his visitor. During redirect examination, however, she maintained that she observed the visitor reach into her waistband, remove an object, and place the object on the chair before the defendant reached for the object and placed it inside his own waistband.

A video recording of the transaction between the defendant and his visitor was played for the jury.

Corporal Jason Clendenion testified that when Officer Scott directed his attention to the monitor displaying the defendant and his visitor, he "saw two people sitting at a picnic table and one of them handing an object to another." He said that he radioed the corrections officers working in that area and told them to take the defendant into custody. He then left the control room and met the other officers and the defendant at "the back of B building." Corporal Clendenion said that he "took up an escort position with the officers." From his vantage point, Corporal Clendenion saw the defendant shake his leg, and an object "fall out of his pants leg on the right." He described the object: "It was an insertion pellet. It looked like, I guess, a condom with an object that looked to be black inside of it, maybe a black, taped-up object."

During cross-examination, Corporal Clendenion said that there were monitored cameras in the area where the defendant dropped the object from his pants but that there was no video recording of the defendant's dropping the item because those cameras were "not hooked up to any type of recording device." Corporal Clendenion acknowledged that he did not actually see the object exchanged between the defendant and his visitor, but he maintained that he saw the visitor "digging into her pants and handing something to [the defendant]."

Corrections Officer Chris Jordan, who was guarding the "[p]icnic area and

-2-

visitation" on April 12, 2009, testified that the defendant and his visitor were the only people at the outdoor visitation area. During the visit, Officer Jordan received a radio call "to check [the defendant]." After receiving the call, Officer Jordan "went and got [the defendant] and took him to the back desk to search him." Officer Jordan said that when the defendant "stood up, his zipper was unzipped." As the officers escorted the defendant to the area where he would be searched, "[h]e dropped a capsule out of his pants leg leading up to some steps to B building." Officer Jordan recalled that the object "was wrapped in black tape, about five, six inches in length, about the size of a half dollar around." Officer Jordan testified that he "was just about to turn back around and go back to the picnic area when [the defendant] shook his leg and the capsule fell out on the ground."

Corrections Officer Christopher Brouse, who assisted Officer Jordan in taking the defendant into custody, testified that he told the defendant that "if he had anything that it would be wise to . . . turn it over to" the guards. He said that as they walked up a set of stairs, the defendant "shook his leg . . . and a black cylindrical object fell out of his pants leg wrapped in a condom." Officer Brouse said that Sergeant David Gary took the item into his possession and took the defendant inside "to be strip searched."

Sergeant David Gary testified that he received "notification from the control room that there's been a pass off on some drugs" and responded to "the back" of the building where the officers were escorting the defendant. Sergeant Gary said that as the defendant walked up some stairs, "he stopped and what we call an insertion pellet fell out." He recalled that the pellet "was approximately four to six inches long wrapped in black electrical tape." Sergeant Gary "put on a rubber glove and reached down and picked it up." Officers took the defendant inside, and Sergeant Gary "opened the pellet to see what was in it." Inside the pellet, Sergeant Gary found marijuana wrapped in plastic wrap and sealed with black electrical tape. Sergeant Gary testified that he field tested, photographed, and weighed the substance and then kept it in his possession until institutional investigator Nicky Jordan arrived to take possession of it.

Sergeant Nicky Jordan, who worked in the internal affairs division of the Tennessee Department of Correction ("TDOC") as the institutional investigator at Turney Center, testified that he received a telephone call from Sergeant Gary and went to the prison to investigate. When he arrived at the prison, he spoke with Sergeant Gary and took possession of the material that Sergeant Gary had removed from the ground after the defendant dropped it. Sergeant Jordan said that he weighed the substance, placed it into an evidence bag, sealed it with tamper-proof tape, and locked it in a safe in his office. He then took statements from the witnesses, and, based on the information he had at that point, he obtained a warrant to arrest the defendant's visitor.

Four days later, transportation officer Homer Kerry transported the substance to the Tennessee Bureau of Investigation ("TBI") for testing.

During cross-examination, Sergeant Jordan said that he was confident that the substance was marijuana based upon his experience in corrections and the results of the field test performed by Sergeant Gary. He said that the purpose of the supplemental testing done by the TBI was to provide an "exact weight and an exact identification" in preparation for the defendant's prosecution.

TBI Agent and Forensic Scientist Brett Trotter testified that the material he received inside the sealed evidence bag from Turney Center was 78.0 grams of marijuana.

Based upon this proof, the jury convicted the defendant of possession of a controlled substance inside a penal institution and imposed a $5,000 fine. Following a sentencing hearing, the trial court imposed a sentence of eight years' incarceration to be served consecutively to the defendant's 23-year sentence for a conviction of second degree murder. The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant contends that the evidence was insufficient to support his conviction, that the trial court erred in its instructions to the jury, that the State failed to establish a sufficient chain of custody for the marijuana introduced at trial, and that the sentence and fine are excessive.

*I. Sufficiency*

The defendant first asserts that the evidence was insufficient to support his conviction because the State failed to establish that he knowingly possessed the marijuana that fell from his pants leg. We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence

contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

Tennessee Code Annotated section 39-16-201 provides:

It is unlawful for any person to:

(1) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances found in chapter 17, part 4 of this title;

(2) Knowingly possess any of the materials prohibited in subdivision (b)(1) while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution.

T.C.A. § 39-16-201(b)(1)-(2) (2006). "'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id.* § 39-11-302(b).

The evidence adduced at trial established that the defendant's female visitor removed an object from inside her pants and placed it on a chair. The defendant picked up the item and placed it inside his own pants. Officer Scott and Corporal Clendenion observed the transaction via a security camera, and a video recording of the transaction was played for the jury. Officers seized the defendant and took him to be searched. Before they entered the building, the defendant shook his leg and an "insertion pellet" fell to the ground. Corporal Clendenion, Sergeant Gary, and Officers Brouse and Jordan each observed the defendant shake the item from his pants leg. Sergeant Gary opened the "insertion pellet" and discovered marijuana. TBI testing established that the material inside the pellet was 78 grams of marijuana. The surreptitious passing of the object, the way the package was constructed, and the defendant's attempt to rid himself of the object before entering the building all support the jury's conclusion that the defendant knowingly possessed marijuana inside Turney Center Industrial Prison.

## II. Jury Instructions

The defendant also challenges the trial court's instructions to the jury, claiming that the trial court erred by informing the jury that the defendant was incarcerated and by refusing to provide instructions on solicitation of the possession of contraband in a penal institution, attempted simple possession, and solicitation of simple possession as lesser included offenses of the charged offense. The State contends that the defendant waived our consideration of the trial court's instruction on the defendant's incarceration and that the trial court did not err in its instructions on lesser included offenses.

### A. Defendant's Incarceration

During its initial instructions to the jury just before the presentation of proof, the trial court made the following remarks:

> One other thing, let me go ahead and tell you this as well, fairly important, Mr. Parliment, the proof will develop, is incarcerated.
>
> That's the nature of the charge, but you are not to guess at what he may have been placed in jail for. You are not to use that against him. That has nothing to do with this particular charge. Do each of you understand that?
>
> So just by virtue of the fact that he may or may not have committed some other offense, you're not to hold that against him in making your decision as it relates to this offense, okay."

The defendant did not object to this remark, and as a result, he has waived our consideration of the issue. *See* Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987); *State v. Rhoden*, 739 S.W.2d 6, 11-12, 18 (Tenn. Crim. App. 1987). The defendant also waived our consideration of this issue by failing to include it in his motion for new trial. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right

to argue on appeal any issues that should have been presented in a motion for new trial but were not raised in the motion); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Nevertheless, the defendant asks this court to subject the issue to plain error review. Because the trial court's remarks were not improper, however, the defendant has failed to satisfy the criteria for plain error review. *See State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (holding that a defendant must show, among other things, that "a clear and unequivocal rule of law [was] breached" to be afforded plain error review). That the defendant was incarcerated was critical proof of the crime charged, and the jury most certainly would have discovered at some point that he was incarcerated. The trial court appropriately instructed the jury that it should not speculate about the reason for the defendant's incarceration and should not infer anything from his incarceration.

In a related claim, the defendant asserts that the trial court erred by failing to provide the challenged jury instruction in writing. Again, the defendant did not object to the written charge provided to the jury by the trial court despite being given the opportunity to review the written charge. He did not request that the challenged instruction be added to the charge and has, therefore, waived our consideration of this issue. *See* Tenn. R. Crim. P. 30(a), (b); *see also State v. Cravens*, 764 S.W.2d 754, 756-57 (Tenn. 1989); *State v. Haynes*, 720 S.W.2d 76, 84-85 (Tenn. Crim. App. 1986); *Bolton v. State*, 591 S.W.2d 446, 448 (Tenn. Crim. App. 1979). Furthermore, although it is error for a trial court to "violate the requirements of [Tennessee Rule of Criminal Procedure 30(c)] in failing to submit 'every word' of his charge to the jury in written form," *see State v. Gorman*, 628 S.W.2d 739, 739 (Tenn. 1982), the rule applies to the "instructions given at the conclusion of the trial," *id*. The record establishes that the challenged remarks in the present case were not part of the trial court's formal charge to the jury provided at the conclusion of the trial. Moreover, the failure to reduce a jury instruction to writing is cause for reversal only if it more probably than not affected the judgment. *See* Tenn. R. App. P. 36(a); *Gorman*, 628 S.W.2d at 740. Given the overwhelming proof of the defendant's guilt, we cannot say that the failure to reduce the challenged remarks to writing more probably than not affected the outcome of the trial.

## *B. Lesser Included Offenses*

The defendant next contends that the trial court erred by failing to provide jury instructions on solicitation of possession of a controlled substance in a penal institution, attempted simple possession of a controlled substance, and solicitation of simple possession of a controlled substance as lesser included offenses of possession of a controlled substance in a penal institution. The State asserts that the trial court did not err by refusing to provide the requested instructions and that, in the alternative, any error occasioned by the omission of the instructions was harmless beyond a reasonable doubt.

An accused's constitutional right to trial by jury, *see* U.S. Const. amend VI; Tenn. Const. art. 1, § 6, encompasses a right to a correct and complete charge of the law, *see State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see Teel*, 793 S.W.2d at 249; *see also* Tenn. R. Crim. P. 30.

The legal accuracy of the trial court's instructions is a question of law subject to de novo review. *See Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 149 (Tenn. 2007). The propriety of a given instruction is a mixed question of law and fact to be reviewed de novo with a presumption of correctness. *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

We agree with the State that any error in the trial court's failure to provide instructions on the three offenses named by the defendant was harmless beyond a reasonable doubt. The trial court provided jury instructions on attempted possession of a controlled substance in a penal institution and simple possession of a controlled substance as lesser included offenses of possession of a controlled substance in a penal institution, and the jury rejected these offenses and convicted the defendant of the charged offense. *See State v. Banks*, 271 S.W.3d 90, 126 (Tenn. 2008) ("When the jury convicts the defendant of the greater charged offense rather than the lesser-included offense or offenses, the jury necessarily rejects all of the other lesser offenses."); *see also State v. Locke*, 90 S.W.3d at 672; *State v. Allen*, 69 S.W.3d at 191; *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998). Moreover, the proof of the defendant's guilt of the charged offense was overwhelming. Two corrections officers observed the defendant take an object passed to him by his female visitor and place it into his pants. Five corrections officers saw the defendant shake an object from his pants leg while being taken inside for a strip search. The proof established that the object was 78 grams of marijuana and that the events occurred inside the Turney Center Industrial Prison. Consequently, we cannot say that "'a reasonable jury *would* have convicted the defendant of the lesser-included offense instead of the charged offense.'" *Banks*, 271 S.W.3d at 126 (quoting *State v. Richmond*, 90 S.W.3d 648, 662 (Tenn. 2002)).

### III. Chain of Custody

The defendant argues that the trial court erred by admitting the marijuana and TBI test results related to the marijuana into evidence because the State failed to establish a "proper chain of custody." Specifically, the defendant alleges that evidence of the chain of custody was inadequate because the State failed to present the testimony of the officer who transported the marijuana from the prison to the TBI laboratory. The State contends that the trial court did not err by admitting the evidence.

"Whether the requisite chain of custody has been established to justify admission . . . is 'a matter committed to the discretion of the trial judge and [t]his determination will not be overturned in the absence of a clearly mistaken exercise thereof.'" *Davis v. Shelby County Sheriff's Dep't*, 278 S.W.3d 256, 267 (Tenn. 2009) (quoting *Shell v. Law*, 935 S.W.2d 402, 409 (Tenn. Ct. App. 1996)).  Accordingly, this court will not reverse the trial court's ruling on the chain of custody "unless the trial court 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *State v. Cannon*, 254 S.W.3d 287, 295 (Tenn. 2008) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

Although "it is 'well-established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody,'" *Cannon*, 254 S.W.3d at 296 (quoting *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000)), the general rule "does not require that the identity of tangible evidence be proven beyond all possibility of doubt," *id.*  The State need not "call all of the witnesses who handled the item." *Id.* (citing *State v. Johnson*, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984)).  So long as the State can "reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence." *Id.*

In this case, Sergeant Gary testified that he took possession of the package immediately after the defendant dropped it to the ground and kept it in his possession until turning it over to Sergeant Jordan.  Sergeant Jordan testified that he placed the item into an evidence envelope, sealed it with tamper-resistant tape, and placed the envelope into a safe that could only be accessed by him.  He said that he removed the item four days later and gave it to Officer Homer Kerry, who transported it to the TBI.  Agent Trotter testified that the TBI log showed that Officer Kerry delivered the package to the TBI on that same day and that the envelope was still sealed when he retrieved it for testing approximately one month later.  Sergeant Jordan then retrieved the package from the TBI laboratory on the day of trial.  This evidence sufficiently established the chain of custody of the marijuana, and the trial court did not err by admitting the marijuana or Agent Trotter's testimony regarding the tests performed on it.

*IV.  Sentence and Fine*

Finally, the defendant contends that the sentence imposed by the trial court and the fine imposed by the jury are excessive.  When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct.  T.C.A. § 40-35-401(d) (2006).  This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."

*State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration" to the appropriate "factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Since the 2005 revisions to our sentencing act rendered enhancement and mitigating factors advisory, appellate review does not extend to the weight afforded mitigating and enhancement factors by the trial court. *State v. Carter*, 254 S.W.3d 335, 345-46 (Tenn. 2008). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

> In making its sentencing decision, the trial court was required to consider:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

At the sentencing hearing, Officer Brouse testified that the defendant admitted that he brought the contraband into the facility, saying that "he wasn't bringing it in for anybody, he was doing his job as an inmate. It was his job as an inmate to bring it in; it was my job as an officer to find it."

Sergeant Jordan detailed the defendant's record of disciplinary action, stating that the defendant faced administrative discipline for "refusing a direct order," possession of a cellular telephone, "violation of state law when he was captured on videotape smuggling in two ounces of marijuana during visitation," a second offense of possession of a cellular telephone, "threatening to beat a female employee," interference of duties, a second offense of threatening a female corrections officer, possession of a cellular telephone charger, and introduction of tobacco products. Prior to his incarceration at Turney Center, the defendant was incarcerated at the Brushy Mountain site of the Morgan County Regional Correctional Complex. While there, the defendant faced disciplinary action for possession of pornographic material, refusal to participate, and possession of two packages of cocaine for resale. Sergeant Jordan said that TDOC chose to handle the defendant's previous offenses internally but decided to prosecute him criminally in this case because the defendant had become "an unmanageable inmate."

Sergeant Jordan said that drugs were "a very big problem, especially out here at Turney Center." He explained that "[m]arijuana at Turney Center res[ells] for approximately eight hundred dollars an ounce; cocaine sells for eight hundred dollars a gram, and there's a large volume of money that operates out of Turney Center." He said that an inmate could "make a fortune" by smuggling drugs into the prison and that many of the violent incidents at the facility are drug-related.

The trial court imposed a sentence of eight years, the midpoint within the range, after finding that the defendant had a history of criminal convictions or criminal behavior in addition to those necessary to establish his range, *see* T.C.A. § 40-35-114(1), and that the defendant committed the offense while incarcerated, *see id.* § 40-35-114(13). The court also ordered the defendant to serve the eight-year sentence consecutively to the 23-year sentence he was serving at the time of the offense based upon the defendant's extensive record of criminal activity. In our view, the evidence supports both the length of the sentence and the trial court's order that it be served consecutively to the sentence he was serving when he committed the offense.

The defendant also argues that the fine imposed by the jury was excessive. When an offense is punishable by a fine in excess of $50, it is the jury's responsibility to set a fine, if any, within the ranges provided by the legislature. *See* T.C.A. § 40-35-301(b). The trial court, in imposing the sentence, shall then impose a fine in an amount not to exceed the

fine fixed by the jury. *See id.*

The trial court's imposition of a fine is to be based upon the factors provided by the 1989 Sentencing Act, which includes the defendant's ability to pay the fine. *See State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). A defendant's ability to pay, however, is not the controlling factor. *State v. Butler*, 108 S.W.3d 845, 853 (Tenn. 2003). A fine, in other words, "is not automatically precluded because it works a substantial hardship on the defendant; it may be punitive in the same fashion incarceration may be punitive." *State v. Jimmy Wayne Perkey*, No. E2002-00772-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Knoxville, Aug. 12, 2003). Other relevant factors include prior history, potential for rehabilitation, and mitigating and enhancing factors that are relevant to an appropriate overall sentence. *See State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997). The seriousness of a conviction offense may also support a punitive fine. *See State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996).

Here, the defendant contends, without citation to authority, that the trial court should not have imposed the $5,000 fine set by the jury because it also imposed a lengthy term of incarceration. Notably however, the defendant did not actually object to the fine set by the jury during the sentencing hearing. Although the defendant pointed out that the fine would be burdensome if he were not afforded a sentence involving release into the community, he did not specifically ask the court to waive the fine. The imposition of an incarcerative sentence does not prohibit the trial court from also imposing a fine. The defendant is not entitled to relief on this issue.

### V. Conclusion

Because we discern no error in the judgment of the trial court, we affirm.

_____
JAMES CURWOOD WITT, JR., JUDGE

-12-