# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 21, 2014 at Knoxville

## STATE OF TENNESSEE  v. CLIFTON SWIFT

**Appeal from the Criminal Court for Shelby County**
**No. 11-07370      Glenn Wright, Judge[1]**

**No. W2013-02182-CCA-R3-CD  - Filed December 18, 2014**

The defendant, Clifton Swift, appeals his Shelby County Criminal Court jury conviction of rape of a child, claiming that the trial court abused its discretion by permitting impeachment of the defendant by his prior conviction for attempting to violate the sexual offender registry act and by admitting into evidence the victim's rape kit.  In addition, the defendant contends that the evidence was insufficient to support his conviction of rape of a child.  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Harry E. Sayle, Jr., (on appeal) and Robert Felkner (at trial), Assistant District Public Defenders, for the appellant, Clifton Swift.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jennifer Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In November 2011, the Shelby County Criminal Court grand jury charged the defendant with one count of rape of a child.  The trial court conducted a jury trial in January 2013.

---

[1]Judge Otis Higgs, Jr., presided over the defendant's trial but passed away shortly after the defendant's trial was completed.  Judge Wright presided over the defendant's post-trial proceedings.

The State's proof at trial showed that in June 2000, the victim, T.S.M.,[2] resided in an apartment in Hurt Village with her mother, her four younger siblings, and her mother's boyfriend, Kevin White. On June 17, the victim, who was 12 years old at the time, fell asleep on the living room sofa; the other occupants of the apartment were all asleep upstairs. At approximately 4:30 a.m., the victim was awakened by someone lifting her off the sofa. When the victim struggled to get away, the perpetrator struck the victim in the face, instructed her to "shut up," and stuck what the victim believed to be a knife against her back. The perpetrator placed something over the victim's face and tied her hands behind her back before moving her closer to a nearby chair. The perpetrator then instructed the victim to pull her pants down and bend over. The victim told the perpetrator that she "had just started [her] cycle," but the perpetrator inserted his fingers inside her vagina, and he then vaginally penetrated her with his penis. Following the rape, the perpetrator returned the victim to the sofa and warned her to "stay right there." The victim never had an opportunity to see her rapist's face. The victim waited for a minute, then managed to free her hands and run upstairs to inform her mother what had transpired.

The victim's mother contacted the police, and Sergeant Kevin Baker with the Memphis Police Department ("MPD") was dispatched to the victim's residence. Sergeant Baker interviewed the victim and examined the apartment, where he discovered that a kitchen window pane was missing. Sergeant Baker also collected a pair of green shorts, a red sweater jacket, and a multicolored curtain tieback, all of which had been used to cover the victim's face and restrain her hands. Sergeant Baker then escorted the victim and her mother to the Memphis Sexual Assault Resource Center ("MSARC").

At MSARC, nurse practitioner Judy Pinson examined the victim and collected a rape kit, which included vaginal swabs. Ms. Pinson also collected a kit from Kevin White. Both kits were sealed and turned over to the MPD.

The evidence showed that on June 27, 2000, Shantell Hardin with the Tennessee Bureau of Investigation ("TBI") received both the kit containing Mr. White's blood standard and the victim's rape kit, which contained a pair of the victim's underwear, the victim's blood and saliva standards, and vaginal swabs and a slide from the victim's examination by Ms. Pinson. Once the kits were received by the TBI, they were assigned a number and placed in the vault until they were retrieved by TBI Special Agent and Forensic Scientist Donna Nelson, regional supervisor for the Memphis TBI laboratory. On November 5, 2002, Agent Nelson performed deoxyribonucleic acid ("DNA") testing on the victim's vaginal slide and determined that the male DNA profile did not match Mr. White's blood standard. Agent Nelson then entered the DNA profile into the Combined DNA Index System

---

[2]To protect the anonymity of the then-minor victim, we will refer to her by her initials.

("CODIS"), but, initially, CODIS returned no match to the profile.

In November 2011, Agent Nelson learned that CODIS returned a hit on the DNA profile from the victim's case. Agent Nelson contacted the MPD to request a buccal swab from the suspect, identified as the defendant, who matched the DNA profile. MPD Lieutenant Cody Wilkerson contacted the defendant, and the defendant voluntarily came to the MPD to meet with Lieutenant Wilkerson. The defendant agreed to give Lieutenant Wilkerson a DNA sample. Upon obtaining a buccal swab DNA sample from the defendant, Lieutenant Wilkerson sealed the sample inside an envelope, labeled it, and delivered it to the evidence room.

Amber Garner, a criminalist with the MPD, retrieved both the victim's rape kit and the defendant's suspect kit containing his buccal swab from the evidence room and delivered the items to the TBI. Agent Nelson tested the defendant's buccal swab and compared the results to that of the DNA profile recovered in the victim's case and determined that the defendant's DNA matched the DNA profile to the exclusion of all others in "the current world population."

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgment of acquittal and a *Momon* colloquy, the defendant elected to testify.

According to the 48-year-old defendant, he was living in Frayser in June 2000, but he would occasionally visit Hurt Village. Mr. White was a close friend of the defendant's, and the defendant knew the victim's mother through Mr. White. The defendant testified that, sometime in June 2000, he met the victim when a girl named Toni brought the victim with her to an apartment in Hurt Village where the defendant was visiting his friend, "Shorty." The defendant asked the victim's age, and the victim and Toni both told the defendant that the victim was 18. After the occupants of the apartment spent some time smoking marijuana, the defendant and the victim "had sex," and the victim and Toni left. The defendant denied ever raping the victim.

The defendant admitted that he was a registered sexual offender because, in 1998, he was convicted of statutory rape. The defendant also acknowledged that he had violated the sexual offender registry act by failing to report an arrest for driving on a suspended licence.

The State recalled the victim, who confirmed that she had met the defendant at an apartment in Hurt Village when she had accompanied her friend, Toni, who wished to visit the defendant. The victim denied that anyone else was at the apartment, and she denied

smoking marijuana or having sex with the defendant. The victim "stood up the whole time" she was inside the apartment, waiting on Toni so that the two of them could leave together. The victim testified that this occurred when "school was just getting out" in 2000.

Based on this evidence, the jury convicted the defendant as charged of rape of a child. Following a sentencing hearing, the trial court imposed a sentence of 20 years. Following the denial of his timely but unsuccessful motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the trial court abused its discretion by permitting the defendant to be impeached with his prior conviction of attempting to falsify compliance with the sexual offender registry act and by admitting into evidence the victim's rape kit after failing to establish a sufficient chain of custody. The defendant also argues that the evidence adduced at trial was insufficient to support his conviction of rape of a child. We consider each claim in turn.

## I. Defendant's Prior Conviction

The defendant first contends that the trial court abused its discretion by allowing the State to use the defendant's prior misdemeanor conviction of criminal attempt to falsify his compliance with the sexual offender registry act for impeachment purposes. Specifically, the defendant argues that the trial court failed to substantially comply with the requirement in Tennessee Rule of Evidence 609, which requires the court to weigh the probative value of the admission of the conviction against its prejudicial impact. We disagree.

Rule 609 provides, in pertinent part, as follows:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:

(1) The witness must be asked about the conviction on cross-examination. If the witness denies having been convicted, the conviction may be established by public record. . . .

(2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

-4-

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release. Evidence of a conviction not qualifying under the preceding sentence is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

Tenn. R. Evid. 609(a)-(b). We review the trial court's determination of this issue via an abuse of discretion standard. *State v. Thompson*, 36 S.W.3d 102, 110 (Tenn. Crim. App. 2000).

In the instant case, the trial court, prior to the defendant's testimony, ruled that the State would be permitted to use the defendant's prior misdemeanor conviction of attempt to falsify compliance with the sexual offender registry act to impeach his credibility should he choose to testify at trial. The trial court, however, reserved its ruling on the defendant's statutory rape conviction, pending the defendant's potential "open[ing of] the door." Although the trial court did not make an explicit finding that the probative value of the misdemeanor conviction outweighed any prejudicial impact, the court made a determination that the State could inquire about that conviction on the basis that the State had "a right to ask [the defendant] about dishonesty and that kind of thing when he testifies." Additionally, the defendant opened the door to questioning about the statutory rape conviction when he

-5-

admitted during direct examination that he became a registered sexual offender after accepting a plea offer in a case wherein he "had got caught up in a club with a[n] underage young lady." On cross-examination, the prosecutor established that the defendant had been convicted of both statutory rape and attempt to falsify compliance with the sexual offender registry act. Moreover, the value of impeachment evidence is increased when the credibility of the defendant as a witness is "an important issue." *State v. Blevins*, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997). When the defendant makes his credibility an important issue, such as by "denying any wrongdoing and asserting legitimate conduct," this court is "not inclined to question the trial court's allowing . . . the convictions for the purpose of impeachment." *Id.* Under these circumstances, we find no abuse of discretion in the trial court's decisions regarding the defendant's prior convictions.

## II. *Chain of Custody*

The defendant next contends that the trial court erred by refusing to exclude from evidence the victim's rape kit on the basis that the State failed to establish a sufficient chain of custody. The State counters that the defendant has waived this issue for failure to object to the introduction of the rape kit at trial. We agree with the State.

At the conclusion of Ms. Pinson's direct examination testimony, the State's motion to admit the rape kit into evidence was met with no objection from the defense, and the rape kit was so admitted. The defendant did not register an objection to the rape kit until Agent Nelson, whose testimony followed that of Ms. Pinson, began to testify about her receipt of the kit. At that point, the kit had already been admitted into evidence.

Because he failed to lodge a contemporaneous objection, the defendant has waived our consideration of the propriety of the admission of the rape kit. *See* Tenn. R. Evid. 103 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context[.]"); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987); *State v. Rhoden*, 739 S.W.2d 6, 11-12 (Tenn. Crim. App. 1987). Clearly, the defendant had ample opportunity to object, and he did not. Thus, our consideration of this issue has been waived.

Even if, however, this issue were properly before us, we would find no abuse of discretion in the trial court's decision to admit the rape kit into evidence.

"Whether the requisite chain of custody has been established to justify admission . . . is 'a matter committed to the discretion of the trial judge and [t]his determination will not be overturned in the absence of a clearly mistaken exercise thereof.'" *Davis v. Shelby County Sheriff's Dep't*, 278 S.W.3d 256, 267 (Tenn. 2009) (quoting *Shell v. Law*, 935 S.W.2d 402, 409 (Tenn. Ct. App. 1996)). Accordingly, this court will not reverse the trial court's ruling on the chain of custody "unless the trial court 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *State v. Cannon*, 254 S.W.3d 287, 295 (Tenn. 2008) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

Although "it is 'well-established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody,'" *Cannon*, 254 S.W.3d at 296 (quoting *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000)), the general rule "does not require that the identity of tangible evidence be proven beyond all possibility of doubt," *Cannon*, 254 S.W.3d at 296. The State need not "call all of the witnesses who handled the item." *Id.* (citing *State v. Johnson*, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984)). So long as the State can "reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence." *Id.*

Here, Ms. Pinson testified that she collected the rape kit from the victim, sealed the kit, and turned it over to the MPD. The kits were received by the TBI on June 27, 2000. After Agent Nelson tested the items in the kit, she re-sealed the kit. Ms. Garner testified that she retrieved the victim's rape kit from the MPD evidence room on November 17, 2011, and delivered it to the TBI. No evidence suggested that the kit had ever been improperly opened or tampered with in any way. Thus, because the evidence presented sufficiently established the chain of custody of the rape kit, the trial court did not abuse its discretion by admitting it into evidence.

### III. Sufficiency

Finally, the defendant argues that the evidence adduced at trial was insufficient to support his conviction for rape of a child. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, rape of a child "is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim" where the victim is over the age of 3 and under the age of 13. T.C.A. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7).

In this case, the victim testified that, when she was 12 years of age, she was awakened in the night by someone lifting her from her living room sofa. The man concealed the victim's face, restrained her hands, and forcibly penetrated her vagina with both his fingers and his penis. Hours after the attack, Ms. Pinson examined the victim and collected vaginal swabs from the victim. The swabs were subjected to DNA analysis, and the DNA profile matched that of the defendant's to the exclusion of all others in "the current world population." When the defendant was identified through DNA evidence as the victim's rapist, the victim recalled meeting the defendant in her apartment complex shortly before the rape.

Viewing this evidence in the light most favorable to the prosecution, we hold the evidence adduced at trial overwhelmingly supports the defendant's conviction of rape of a child.

*IV. Conclusion*

In light of the foregoing analysis, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE